# Massachusetts Mut. L. I. Co. *v.* Crenshaw.

### Assumpsit.

(Decided November 25, 1915. Rehearing denied January 20, 1916. 70 South. 768.)

1. **Appeal and Error; Remand; Amendments on.**—Although a defendant may, on a second trial, after remandment be allowed to place on file amended pleas, which are substantially amendatory statements of the defense upon which the case was first tried, yet the filing of such pleas may be denied where defendant would get the same benefit under other pleas.

2. **Same.**—After there has been one trial, it is discretionary with the trial court, on a retrial, to receive amended pleas presenting an entirely new ground of defense.

3. **Insurance; Life; Representations.**—Where insured was required to execute a certificate of continued good health, before receiving a policy, such certificate was a representation and not a warranty.

4. **Same; Misrepresentation.**—Where the life policy provided that after application and before delivery insured should execute a certificate of continud good health, and during the period intervening between the application and the issuance of the policy insured consulted a physician about headaches, but was not incapacitated and executed such a certificate of continuing good health, the certificate was a mere representation and did not necessarily mean that insured was in perfect health, but merely that he had been free from apparent serious disease, and was not conscious of any derangement of important organic functions, and the fact that insured at the time he made this certificate was troubled with incipient brain tumor, will not avoid the policy where the representation as to good health was not made with actual intent to defraud.   (§ 4572, Code 1907.)

5. **Charge of Court; Assuming Facts.**—Charges which assume facts that are not in evidence, are properly refused.

6. **Appeal and Error; Instructions.**—Where the insurer had deposited in court for plaintiff's use the amount of the premiums paid, a charge on the measure of damages not taking into consideration the amount of such premiums is erroneous, but the error is rendered harmless where the judgment is on plaintiff's motion reduced by the amount of the premium, the judgment being otherwise correct.

7. **Evidence; Best Evidence; Rule; Application.**—Where insured was a traveling salesman and it was set up that between the intervals of the application for and the delivery of the policy, the insured was not in good health, the employer of the insured might testify that during that period orders from such insured came to him from various places in the state, and that these orders came through the mail, bearing postmarks showing their points of origin, such testimony not being subject to objection that the orders and envelopes were the best evidence, as it was collateral to the main issue.

8. **Insurance; Life; Authority of Agent.**—Where the action was on a life policy, evidence that the general agent of insurer had no authority to deliver the policy without a certificate that insured's health had continued good from the time of the application to the time of the delivery of the policy, is admissible.

9. **Same.**—A general agent, however, cannot testify that the policy would not have been delivered had the certificate shown that during that interval insured had been sick, had consulted a physician, or had suffered from headaches, since such matters were the mere conclusion of the witness not communicated to the insured.

10. **Evidence; Opinion; Hypothetical Question.**—A party need not include in his hypothetical question, his adversary's theory of facts, but it is enough that his question be so framed as to fairly and clearly present the state of facts which he claims is shown; hypothetical questions must be based on facts, however.

APPEAL from Etowah Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Action by Birdie M. Crenshaw against the Massachusetts Mutual Life Insurance Company for the face of a policy issued upon the life of John W. Crenshaw. Judgment for plaintiff, and defendant appeals. Affirmed.

For former report of this case, see 186 Ala. 460, 65 South. 65, where the necessary pleas will be found set out. Upon remand of the cause, defendant offered to file other pleas. the substance of which appears in the opinion, all of which were stricken, except plea AA, which is as follows: On, to wit, December 19, 1911, the insured, John W. Crenshaw, applied in writing to the defendant company for the issue and delivery to him of the policies of insurance sued on, which said written application forms a part of and is embraced in said insurance policies. That in and by said written application of the insured he was interrogated

touching his family record, his present and past bodily ailments and afflictions, and he therein and thereby made it to appear that he was in sound physical condition, and in said application he said: "I hereby declare on behalf of himself and any other person who shall have or claim any interest in any policy issued upon this application that, to the best of his knowledge and belief, each of the foregoing answers in parts I and II of this application is full, complete, and true, and that I am sound in physical condition and a fit subject for life insurance." And in and by the said application and the policy contracts sued on it was agreed as follows: "I agree that the insurance hereby applied for shall not be in force until the acceptance and approval of this application by the company at its home office, the delivery of the policy therein, during my present condition of health, and upon such delivery said policy shall be considered as having become effective upon the date stipulated in the policy as the date on which the insurance begins." Defendant avers the policies of insurance were not delivered to insured or agent prior to, to wit, the 3d day of February, 1912, and were delivered then after insured had made the following statement in writing, viz.: "Massachusetts Mutual Life Insurance Company, Montgomery, Alabama, Feb. 3d, 1912. I hereby certify that there has been no change in my family record since my application for policy No. 293071 was made; that I am now in good health, have had no sickness, and have not required the services of any physician since the date of said application, except:   *   *   *" Defendant alleges that said last-quoted written statement of insured was untrue, in this: That on said 3d day of February, 1912, the day when said policies of insurance were delivered to insured or agent, said insured was not in good health and was afflicted with tumor of the brain, or some other disease, the tendency of which was to shorten life, and defendant avers said insured made said untrue statement to wit, that his health was good, with the actual intent to deceive, that defendant acted upon said untrue statement, and induced thereby delivered said policies of insurance, wherefore defendant says plaintiff ought not to recover, and defendant has returned all premiums paid on said policies.

W. J. BOYKIN, for appellant. GOODHUE & BRINDLEY, for appellee.

SAYRE, J.—After the judgment first rendered in this cause had been reversed on appeal, and the cause remanded for a new trial (186 Ala. 460, 65 South. 65), defendant, now again appellant, offered to file a number of pleas which had been conceived in the effort to make a more satisfactory statement of the defense upon which, in varying shapes, it had previously relied, to wit, that the policy had been procured by the fraud of the insured. At the first trial, as appears from such of the original pleas as have been reproduced in the record before us, defendant averred that certain representations made by the insured in order to obtain the policy were false and made with an actual intent to defraud. In some of those pleas it was averred that the misrepresentations complained of had been made in the original application for the policy; in others the allegation was that they had been made in the subsequent "unmodified health certificate." In all of them it was averred that the matters misrepresented were material to the risk assumed by defendant, or it appeared that they were of such inherent gravity as that their materiality was perhaps to be inferred as matter of law. The obvious purpose of a majority of the pleas offered for the first time on the second trial was merely to recast the defenses originally interposed. Several of them, however, sought to change or modify the ground of defense by averring that the matters misrepresented in the "unmodified health certificate" were material to the risk without averring that they were made with the actual intent to defraud. All of them were in the first place filed with the clerk without leave of the court first had and obtained, and were for that reason sticken on motion. Then, upon defendant's request for leave to file, the court rejected all of them except that one marked AA.

(1) These pleas offered at the last trial, with the possible exception of those of the class last above referred to, though not so denominated, were, in substance, amendatory statements of the defense upon which the case had been first tried; they were not additional or wholly different pleas within the purport and meaning of the rule laid down in *Jones v. Ritter*, 56 Ala. 270, and the line of cases cited in *Craig v. Pierson Lbr. Co.*, 179 Ala. 535, 60 South. 838, they fell rather under the remedial influence of the statute of amendments, and defendant should have been allowed to place them upon the file, their legal sufficiency remain-

[Massachusetts Mut. L. I. Co. v. Crenshaw.]

ing subject to question by demurrer, unless, indeed, it appeared that in other pleas already on file defendant had the full benefit of the defense it was thus attempting to cast into new shapes. From an inspection of the record, including the pleas upon which both trials were had and plea AA, which latter stated its matter of defense with a generality that secured to defendant the right to prove its substance without the embarrassment of unnecessary detail—from this record it is to be inferred that the trial judge refused to allow the filing of the numerous pleas about the exclusion of which defendant now complains on the theory that they were superfluous, and would result only in the useless complication of a record already incumbered with repeated statement of the same defenses. In this the court was right, certainly so far as its action concerned the pleas offered other than those which alleged that the matter misrepresented was material without more.

(2-4) As for the pleas of the last-mentioned character, if they be taken to have proposed an entirely new ground of defense, it was within the discretion of the court to allow or reject them under the authority of *Jones v. Ritter, supra,* and *Craig v. Pierson Lumber Co.* to which we have heretofore referred. And, whether they be considered as additional pleas within the meaning of those cases or as merely amendatory statements of the defenses otherwise pleaded, they were in either case defective in substance, had never properly found their way into the record, and there was no error in the court's denial of leave to file them. Our reasons for this conclusion will be stated in connection with defendant's exception to a charge given for plaintiff in the following language: "The court charges the jury that, unless they are reasonably satisfied from the evidence that the insured made some false representation charged in some one of the pleas with the actual intent to deceive defendant, the jury should find a verdict for the plaintiff."

Plaintiff had shown without dispute the payment of a premium, the issue of the policy, and the death of the insured, within the term covered by the premium. On this evidence and the issues made by the court's rulings on the pleas this charge was clearly correct. But defendant (appellant) contends that the giving of this charge and the exclusion of its pleas alleging the misrepresentation of a material matter, without more, operated to

cut off its defense under the last clause of section 4572 of the Code, which its said pleas were intended to interpose; the section reading as follows: "No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of life insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresntation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

Defendant's insistence comes to this, that, if the assured in the interval between his original application for the policy and the date of his "unmodified health certificate" suffered an illness affecting the probable duration of his life and about which he consulted a physician, then plaintiff could not recover, even though the jury should find, as under well-developed, though strongly controverted, tendencies of the evidence they were authorized to find, that he failed to state the fact of his illness and the attendance of a physician, not with the intent to deceive, but because he was ignorant of the serious portent of his malady and in good faith believed it to have been nothing more than a mere transitory indisposition without tendency to shorten his life or impair his native constitutional vigor.

The certificate was a representation, not a warranty. It did not necessarily mean that the insured was in perfect health or had been absolutely free from every slight or temporary indisposition; its legal import was that he had been free from any disease or ailment that affected the general soundness and healthfulness of his system; and, if he had been free from apparent serious disease, or was not conscious of any derangement of important organic functions, he may have truthfully made the certificate.—3 Cooley's Briefs, 2110 et seq., where many cases are cited. So, by analogy, and correctly, as we think, it has been held that the truthfulness or good faith of a representation of this character is not necessarily impeached by proof that the insured had the services of a physician for a mere slight or temporary indisposition, nor even by proof that his illness was of a more serious nature, if the representation is nevertheless made in good faith.—25 Cyc. 817. Defendant was entitled, of course, to a candid statement of the mind of the assured in respect of any serious illness he may have suffered and concerning which

he may have consulted a physician; but, such statement made, defendant took the risk that the assured may have harbored unaware the seed or beginning of some obscure disease materially affecting the probable duration of his life. Again latent risks of that sort life insurance companies provide, to what extent they can, by examinations conducted by experts of their own selection.

In *Empire Life Ins. Co. v. Gee,* 171 Ala. 435, 55 South. 166, we held that: "Where fraudulent representations are pleaded in defense to an action on a policy of insurance, it must be shown that false statements have been made with intent to deceive, that they related to matters intrinsically material to the risk, and that the insurer relied on them."

This is the commonly accepted doctrine, and in that case we said that it had not been changed by statute or decision. It follows that those pleas, brought forward for the first time at the second trial, and alleging that the misrepresentations were material without, however, alleging an intent to defraud, were rejected without error.

It was disputed between the parties to the present cause whether prior to the original application for the policy insured had suffered from any serious illness which he failed to disclose, and whether the attack from which he suffered in the interval covered by the "unmodified health certificate" was a serious illness or a mere slight temporary ailment having no appreciable continuing tendency to shorten life, and, if that attack was serious in itself or as indicating in connection with previous headaches the presence of tumor of the brain, whether insured knew or had such reason for suspecting the true nature of his case as that good faith required of him a more extensive disclosure than he, in fact, made. On all these questions the testimony, expert and otherwise, afforded reasonable grounds for diverse inferences, and we are unable to say that the jury erroneously solved any of them. The charge in question asserted, as we have said before, a correct proposition of law, and there was no error in giving it to the jury.

(5) No further statement of the law of the case is necessary to a disposal of the other errors assigned upon the court's oral charge or the special written instructions given or refused on request of the parties. The charges given to plaintiff followed correct principles, while it has appeared on close examin-

ation that most of the charges refused to defendant were based upon a theory of the law out of harmony with what we have hereinbefore said. Some of the latter class embodied also unwarranted assumptions of fact. To particularize to some extent, charge 2 assumed that the certificate was false. Under the evidence and the principles of law stated above its truth or falsity was a matter for jury decision. Charge 33 assumed that the jury might find that the physician who saw the insured on his return to Montgomery after his illness at Luverne then advised that he go to Johns Hopskins for treatment by a specialist. There was no evidence to support this hypothesis of the charge. This advice was given to the wife of the insured on a later occasion after the insured had been stricken with the attack that proved fatal and while he was unconscious. We think we need not point out the specific defects in the other charges refused. Suffice it to say, each of them misconceived either the law or the evidence in the case, and they were refused without error.

(6) Instructing the jury as to the measure of damages in the event of a verdict for plaintiff, the court failed to take account of the fact that defendant on filing its pleas after the return of the cause for a new trial had deposited in court for plaintiff's benefit the amount of the premium paid by the insured. This was error, of course, but it affected only the amount of the recovery, not the principle of decision to be observed, and on plaintiff's motion the judgment, correct in other respects, was reduced by the amount of the premium, and so the error was completely cured, leaving to defendant no cause of complaint on that score.

We find no sufficient reason for discussing seriatim those assignments of error which are based upon the rulings on the evidence. They may be appropriately grouped and disposed of as follows:

(7) As bearing upon the question agitated between the parties in respect to the health of the insured during the week intervening between the original application for the policy and the health certificate, a matter bearing in turn upon the issue of fraud in the certificate, the plaintiff, in order to show that the insured went about his usual business during the time, was permitted to show by the witness Frank, for whom the insured worked as a traveling salesman, that insured had sent in orders

purporting to come from various places in the state, and that these orders came through the mails bearing postmarks showing their points of origin. Defendant's objection was that the orders themselves and the envelopes bearing the postmarks should have been offered as the best evidence of the facts sought to be proved. The matters thus shown were collateral to the material issues in the cause, and there was no error.—*Pollak v. Gunter*, 162 Ala. 317, 322, 50 South. 155, and authorities there cited.

(8, 9) That defendant's general agent Meyer had no authority to deliver the policy in suit to the insured without the health certificate was shown without dispute. This piece of evidence, we take it, was admitted in obedience to the ruling of this court on the former appeal. But the court was obviously right in excluding the answer of Meyer as a witness that the policy would not have been delivered had the certificate shown that the insured had been sick, attended by a physician, or suffered from headache since the making of the application, and was likewise right in excluding the witness' statement of the reasons for his answer. These answers of the witness were not narrative of facts. They were nothing more than statements of the conclusions of the witness—statements of considerations, which, though uncommunicated to the insured, would in the present judgment of the witness have influenced his action in respect to the delivery of the policy. Clearly these answers shed no light upon the issue of the alleged fraud of the insured in making the "unmodified health certificate."

(10) Plaintiff's hypothetical questions as to which defendant's objections were overruled did not state the case, upon which the expert opinion of the witness was desired, according to all the tendencies of the evidence, it is true; but they were properly allowed nevertheless. It is not to be expected or required that the party seeking the opinion of an expert will include in his hypothesis his adversary's theory of the facts, since that would require the examining party to assume the truth of that which he generally denies. It is enough that his question is so framed as to fairly and clearly present the state of facts which he claims to be proved, and which the evidence on his part tends to prove. —Jones on Ev. §§ 370, 371; *Pullman Co. v. Meyer, infra,* 70 South. 763, and cases cited.

[Brannan v. Sherry.]

On the other hand, those interrogatories propounded by defendant and to which objections were sustained have been found to hypothesize facts of which there was no evidence, and for this reason they were properly disallowed.—Jones, ubi supra.

After due consideration of all the assignments of error, we have found no sufficient reasons for a reversal. Upon the whole case the question of defendant's liability upon the policy was one for the jury, and, for aught appearing of record, the result must be allowed to stand.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.