172 So. 353

## NATIONAL LIFE & ACCIDENT INS. CO. v. CUMMINGS.

### 6 Div. 981.

Court of Appeals of Alabama.

Feb. 2, 1937.

Wm. A. Jacobs, of Birmingham, for appellant.

Chester Austin, of Birmingham, for appellee.

SAMFORD, Judge.

The policy sued on was issued by the defendant on the 22d day of September, 1930, insuring the life of Alfred Cummings and naming as beneficiary thereunder Willie Cummings, the plaintiff in this case. In the face of the policy and as a part thereof there appears the following condition: "No obligation is assumed by the Company prior to the date hereof, nor unless on said date the insured is alive and in sound health. Should the proposed insured not be alive or not be in sound health on the date hereof any amount paid to the Company as premium hereon shall be returned."

The proof of death filed with the company by the beneficiary discloses that on June 25, 1932, Alfred Cummings, the insured, died of pulmonary tuberculosis, which fact was certified by the attending physician whose knowledge extended for twelve months prior to the death of the insured. It is testified to and not disputed that in the summer of 1929 insured had pulmonary tuberculosis in such advanced state as that he had at least one severe hemorrhage from the lungs, and was removed to the Baptist Hospital where he underwent treatment for a period of about three weeks. After leaving the hospital, he was treated by the same doctor until some time in February, 1930. During which time insured was doing some kind of light work in the L. & N. Shops. Dr. Nall, who treated insured to February, 1930, testified that: "Pulmonary tuberculosis is lung tuberculosis. As general rule it extends over a period of several years, for an indefinite period, and always follows a well defined course. It commences with night sweats, then a slight cough. The cough increases when the tubercular bacilli goes further into the lungs: you have a cavity formation. If a cavity forms, if a patient can be walled off no further progress ensues then, but a break down is liable to take place, and whether it is going to be a hasty death or a long drawn out affair depends on how large the cavity is and how progressive that particular case may be, but it always follows a very definite course and might be for months or might be for ten or even more years an active case of tuberculosis, and further that bacilli may be confined during, over that period, even until it breaks the patient down: hence people having a stronger constitution may work on a job and die that night."

The brother-in-law and sister of the insured at whose house he lived and finally died testified to a continuation of the symptoms indicating tuberculosis from the time he left the hospital until the end came, and Dr. Macklin, who was the family physician, certified to the tubercular condition as having existed at least twelve months prior to death. Of which condition, the disease itself, would probably have given notice to the insured, in addition to which the insured was specifically informed that he had tuberculosis, and was warned as to how to protect the other members of the household. There was some evidence on the part of the plaintiff tending to prove that the insured was on the pay roll of the L. & N. Railroad Company as an engine wiper or oiler and that he did some work during the period from February, 1930, until he died and that he worked continuously enough to keep him on the pay roll of the company. There is some evidence that from October, 1930, to February, 1931, the insured was treated by a Dr. Harris for arthritis and chills and fever and this doctor testifies that he did not find any evidence of tuberculosis, but he did not testify as to having examined insured for evidence of this dis-

ease. So that we have positive undisputed evidence that the insured was seriously affected with pulmonary tuberculosis from the summer of 1929 to February, 1930; that the symptoms continued from that time on as tesified to by nonexperts, and the undisputed evidence of an expert physician with a personal knowledge of insured's condition for twelve months before death, that insured died of the disease in June, 1932. So we have a period from February, 1930, to June, 1931, during which plaintiff contends that insured was cured of the disease and contracted it again after the application for insurance in this case was made.

It is the law in this state, many times decided, that a clause in a life insurance policy to the effect that no obligation is assumed by the insurer unless on the date of the delivery of the policy insured is alive and in sound health is, in legal effect, a warranty within the terms of section 8364 of the Code of 1923, and if the unsoundness in health consists of pulmonary tuberculosis, the court takes judicial knowledge of the fact that it does increase the risk of loss. Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649; Southern Life & Health Ins. Co. v. Morgan, 216 Ala. 529, 113 So. 540; Brotherhood of Railway & S. S. Clerks v. Riggins, 214 Ala. 79, 107 So. 44.

The policy in the instant case was issued by the company without medical examination based upon an application therefor signed by the insured in which there were certain representations made by the insured to induce the issuance of the policy. These representations were made the bases of defendant's pleas on the trial of the case and will be adverted to and treated in the following opinion:

Being set up as fraudulent representation in defense to the action on the policy of insurance, it must be shown that such answers as appear in the application as false statements have been made with the intent to deceive and that they relate to matters intrinsically material to the risk and that the insurer relied thereon. This is the commonly accepted doctrine as declared in Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 So. 166; Massachusetts Mut. L. I. Co. v. Crenshaw, 195 Ala. 263, 70 So. 768.

In the application for insurance to the question "Are you insured in this Company?" the insured answered, "No." Under the plea of the general issue, in short, by consent the defendant insists that this answer was fraudulent, with the intent to deceive and that therefore the policy issued is void. The evidence tending to prove this plea is without dispute that at the time the policy sued on in this case was issued, under the date of September 22, 1930, there were three outstanding policies of insurance issued by this defendant on the life of the insured. That these three policies continued in force to the time of the death of the insured and upon death were paid. Replying to this, the plaintiff introduced evidence tending to show that notwithstanding the answers of the insured that he had no outstanding policies in the defendant's company, the defendant with a full knowledge of such misstatement continued to collect monthly the premium due on the policy in the instant case and is thereby estopped from setting up that defense. In undertaking to make this proof, the plaintiff offered evidence relative to the agency of the defendant's manager in Birmingham, but plaintiff utterly failed to prove that the manager was such officer of defendant's company authorized to waive that condition in the policy. National Life & Acc. Ins. Co. v. Cummings, 26 Ala.App. 481, 162 So. 560. But it was proven that the premiums were paid through the agency in Birmingham and were remitted to the home office in Nashville, Tenn., where a record was kept of all policies issued by defendant and therefore the defendant company itself had knowledge of these payments and it will not now be permitted to say that a waiver of the above answer did not take place. Many cases could be cited to sustain this position. We are content, however, to cite the case Atlas v. Metropolitan Life Ins. Co. (Sup.) 181 N.Y.S. 363, and authorities there cited.

To question 23 in the application insured answered that he has never had a number of diseases therein set out including the specific disease of tuberculosis. In answer to question 24 he said that he had not had medical or surgical attention within the last five years, and in answer to question 24½ he answered that he had never been in a hospital for treatment.

It is without dispute that in August, 1929, insured had pulmonary tuberculosis;

that he had a serious hemorrhage; that his condition was so serious that he was removed to the Baptist Hospital in Birmingham where he was treated for three weeks and after removal from the hospital the treatment was continued by the physician until February, 1930, when he was improved but not cured.

The testimony of his brother-in-law and sister were to the effect that after he was removed from the hospital he lived with them and that he was notified by the doctor that he had tuberculosis, and was told how to prevent its spread in the family. These witnesses also testified that he continued in declining health with symptoms of tuberculosis until he died and the doctor, who gave the certificate of his death, certified that tuberculosis had existed to his knowledge for twelve months prior to death. There was some testimony by later witnesses to the effect that just prior to and at the time of the application for the policy in this case insured appeared to be in ordinary health and one physician testified that during the year 1930 he treated insured for malaria and arthritis, but this physician did not examine him for tuberculosis and none of the later witnesses made any such examination.

■ It is an undisputed fact that insured knew he had the hemorrhage, he knew he had been in the hospital, he knew he had been attended by a physician, and he knew that these statements were false. Certainly these statements in the application would have affected the conduct of the insurer to a very material extent in determining whether under those circumstances they would enter into a contract of insurance with the insured. If the answers of the insured had been true instead of false, as they were, the company would most surely have made further investigation before issuing the policy and while the representations may not have been the sole inducement to the contract nor the chief influence inducing it to action, it is enough, if, as a contributory influence that operated upon mind and conduct of the company to any material extent. Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307; Metropolitan Life Ins. Co. v. Dixon, 226 Ala. 603, 148 So. 121.

■■ Section 8364 of the Code of 1923 provides: "No * * * oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

While ordinarily what disease or sickness may be considered a material risk may present a jury question, there are some diseases of such known incurability and fatal character, commonly known to man to be material to the risk of insurance. This court and the Supreme Court have many times determined tuberculosis as one of these diseases and when it is proven that an insured made a false statement that he had no such disease, and upon such statement obtained policy contract of life insurance the policy would be void. Brotherhood Railway & S. S. Clerks v. Riggins, 214 Ala. 79, 107 So. 44; Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335.

■ Even if we should hold there is a scintilla of evidence tending to prove that on September 22, 1930, the date of the issuance of the policy in this case, the insured was free from the disease of pulmonary tuberculosis, the evidence is so overwhelming against such a conclusion that a verdict rendered for the plaintiff on that point should not be allowed to stand. Under the various decisions touching questions of this kind in insurance cases, appellate courts have hesitated to say that the defendant was entitled to the affirmative charge, but where, as in this case, it is so apparent that a verdict for plaintiff must of necessity be entirely speculative as against the positive evidence of the defendant, the verdict is wrong, and will not be allowed to stand. On this question the court should have granted a motion for a new trial.

■ On the former appeal in this case National Life & Accident Ins. Co. v. Cummings, 26 Ala.App. 481, 162 So. 560, 564, we said, "On the issues as presented by the foregoing pleas [setting up false representations in the application], the evidence was in conflict, and we cannot say that the overwhelming weight of the evidence sustained the pleas so as to bring the case within the influence of Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335." On the present appeal this record has been examined more carefully respecting these particular points, and we have now reached the conclusion that

while there is some evidence which might carry to the jury the question of an intent to deceive on the part of the insured in making the application, 'the evidence for the defendant is so overwhelming to a contrary conclusion that to allow the verdict to stand would be wrong and unjust. The power to set aside verdicts is essential to prevent irreparable injustice in cases where a verdict is wholly wrong. However, in exercising the power the court should be careful not to infringe the right of trial by jury, and should bear in mind that it is their exclusive province to determine the credibility of witnesses, to weigh the testimony, and to find the facts. We realize, also, that the power to set aside verdicts should only be exercised when it affirmatively appears that the substantial ends of justice require the examination of facts by another jury.

Notwithstanding these principles, and also the consideration there must be given to the findings of the trial judge in refusing to set aside the verdict, we cannot allow this verdict to stand and on these grounds a motion for a new trial should be granted.

The rulings of the court were contrary to the foregoing expressed views, and for the errors as indicated the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.