38 So.2d 737

**BROWN SERVICE INS. CO., Inc. v. CHILDS.**

8 Div. 659.

Court of Appeals of Alabama.

Aug. 3, 1948.

Rehearing Denied Oct. 5, 1948.

Julian Harris and Norman W. Harris, both of Decatur, for appellant.

S. A. Lynne, of Decatur, for appellee.

CARR, Judge.

The plaintiff below recovered a judgment against Brown Service Insurance Company, Inc., in an action based on a life insurance policy. The insured was Mrs. Bessie B. Childs, and the beneficiary was her son, Ray Childs.

The policy contains these provisions:

"Preliminary Provision—No liability, except the return of all premiums paid hereon, is assumed by the company prior to 12:00 o'clock noon, Central Standard Time. of the date hereof, nor unless at said time and date, the proposed Insured be alive and in sound health."

"Limitation of Insurance:—No obligation is assumed by the Company prior to the issuance of this Policy. The liability of the Company shall be limited to the return of premiums paid on the Policy if (1) before the date hereof, the Insured has been rejected for insurance by this or by any other Company, Order or Association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease or

chronic bronchitis, or cancer, or disease of the heart, liver or kidneys, unless such rejection, medical attention or previous disease is endorsed hereon in a waiver signed by the President, a Vice-President or Secretary."

The case was submitted to the jury on Count 1 of the complaint and on defendant's plea of the general issue and special pleas. The above provisions of the policy are set up in the special pleas.

Without dispute in the evidence the following facts appear: Policy issued May 26, 1941. Insured underwent an operation on June 7, 1941, at which time she had a serious and greatly involved cancer. Insured remained in the hospital following the operation and died on July 8, 1941. Her age was fifty-two years.

The evidence in appellant's behalf consisted of the testimony of five physicians. To present a fair and full disclosure of the questions we are called upon to decide, the tendencies of the expert testimony will be delineated in some detail.

Dr. W. P. Baugh, a surgeon of thirty-three years engagement, testified that he first examined Mrs. Childs on June 6, 1941, and that he performed the operation on the day following; that after the incision he found a tumor nearly as large as a man's head, from which he evacuated probably two quarts of fluid; that the cause of death was cancer or carcinoma of the left ovary; that a contributing cause of death was the spread of the cancerous infection which involved the patient's lungs. The doctor gave as his judgment that the tumor had existed for "several weeks—perhaps months,—not in that active state, however." "It is probable, and in all probability it existed first as an innocent tumor; then these changes took place from time to time, and finally asserted themselves in various symptoms that led her to the operation."

The witness certified to a statement after Mrs. Child's death. In it we find: "The cause of death as determined by me was carcinoma of ovary—metastasis in lung and in my opinion had its origin about January 1940."

In cross examination the surgeon stated that benign tumors are not serious to the health, "they might become detrimental to the health after so long a time, but lots of benign tumors may not bring on any symptoms at all."

Dr. J. B. Wiley observed the operation. He had not attended the patient prior to this time. He attributed the cause of death to cancer of the uterus, and from the symtoms related by Mrs. Childs he fixed the duration of the cancer to be "2 or 3 months." The doctor stated also that when the incision was made he observed that the cancer had spread to other regions and "the pelvic portion was a solid mass of it."

The testimony of Dr. D. C. Cox, a nephew of the insured was taken by deposition and offered in this form. We copy the pertinent parts of his evidence from the record:

"Q. Did you examine her on June 2, 1941? A. Yes.

"Q. What condition did you find her to be in from a physical standpoint at that time? A. I discovered that she was anemic, and that she had a tumor—to use common every day language—of the womb.

"Q. That's also known as an abdominal tumor? A. Pelvic.

"Q. Was she operated on at some later date? A. Yes.

"Q. Do you recall the date of the operation? A. No, I do not.

"Q. It was only a short time after you had made your examination, was it not? A. Yes. I recall that it was about two weeks, or something like that, after I examined her.

"Q. Who performed the operation? A. Dr. W. P. Baugh.

"Q. Of Decatur? A. Of Decatur, Alabama.

"Q. Were you present at the time of the operation? A. Yes.

"Q. And did you observe it? A. Yes.

"Q. Did you assist in the operation? A. Yes.

"Q. Now, what condition did you observe after the incision had been made during that operation? A. The observation was made that the condition was such that the organ could not be removed, due to a

highly involved state of the tumor and the abdominal organs, viscera intestines omentum being densely adherent to the tumor, and bleeding on contact or upon any effort to separate the organs. Therefore, the only feasible thing to do was to close the abdomen, without any further manipulation.

"Q. Now, you referred a few minutes ago to a tumor, and during the operation and when the incision was made, you of course observed that tumor, did you? A. Yes.

"Q. Was that a cancerous tumor? A. I would say by gross examination that the tumor had undergone cancerous degeneration.

"Q. And by observing that tumor, could you form a judgment as to the length of time it had existed? A. It is possible for a tumor to grow to that size within one year. On the other hand, some tumors would require several years to develop to such size.

"Q. It is your opinion, is it, that Mrs. Childs had had that tumor for at least a year? A. Yes.

"Q. And possibly for longer than that? A. Possibly.

"Q. But in your opinion a year would be the minimum for it to grow to that size? A. Yes; in my opinion.

"Dr. Cox: I would like to state also that there is another condition that could cause the same thing.

"Mr. Harris: What is that?

"A. In the case of the tumor's having previously undergone a state of acute inflammation, the abdominal viscera could have adhered to the tumor in such manner as was found upon operation at this time. I will state also, no pathological examination was made of the tissue and, of course, without such examination one could not say positively that it was cancer.

"Q. State whether or not in your opinion it was cancer, Dr. Cox. A. In my opinion, I thought at the time that it was cancer.

"Q. Do you have any opinion or judgment as to how long that tumor had been cancerous? A. I would say that if the tumor were cancerous that the cancerous degeneration had been present for a very short time.

"Q. What do you mean by 'a very short time'? Can you state that in a period of weeks or days, or months? A. I would say weeks, because the physical state of the patient was such as to belie the presence of cancer for any longer period of time."

"Cross Examination by Mr. Lynne:

"Q. Doctor, I have just shown you a book that is on gynecology, 'Surgical Clinics of North America', for the month of August, 1947, the Mayo Clinic Number, and it has this statement: 'Positive diagnosis can be made only from microscopic examination of tissue', and I will ask you if that's correct to determining whether or not this affliction was cancerous? A. That's true.

"Q. And that was not done? A. That was not done.

"Q. The womb and the uterus are the same thing, aren't they? A. Yes.

"Q. This disease was known as carcinoma of the uterus? A. Yes.

"Q. The symptoms of carcinoma of the uterus are that the skin is muddy, pale, or slightly jaundiced? A. Yes.

"Q. And another is emaciation and loss of weight? A. Yes.

"Q. Increased resistance over stomach? Inguinal and supraclavicular glands may be palpated? A. That's correct.

"Q. And these glands were not palpated in this case, were they? A. Those glands were not palpable. That is the reason that I state that if the condition were cancer of the uterus that it was in the early stage."

Dr. John C. Bragg saw Mrs. Childs professionally on June 4, 1941. Turning to the record, we find:

"Q. What condition did you find her to have? A. She had a large abdominal tumor.

"Q. About what was the size of that tumor? A. I don't know; of course that

was relative; it was well up above the umbilicus, so that would necessarily make it rather large; I would say at least 6 inches in diameter; that is relative.

"Q. A tumor starts off small and grows, either slowly or rapidly, does it not? A. Yes, sir.

"Q. State to the jury how long, in your judgment, that tumor had been growing? A. Well, I don't know; it could have been a long time, if it was a slow-growing tumor, or it could have been relatively short, if it was a rapidly-growing tumor. I presumed at that time that it was a cyst, and cysts aren't considered cancerous, or malignant, and grow rather slowly; however, I can't swear that was what she had, because I didn't see her any more.

"Q. A cyst is a slow-growing tumor? A. Yes, sir.

"Q. Suppose it turned out to be a cancerous tumor,—how long, your judgment would it take to have grown to the size you found it to be on June 4th? A. Cancerous tumors grow rapidly; I would say 2 or 3 months would have been a short time for it to have grown that size."

Dr. A. J. Dinsmore was the family physician of the insured. He confined his testimony to examinations and treatments from January to May 10, 1941. During this period he saw the patient at intervals. The doctor testified that at different times, during the period indicated, he found Mrs. Childs having some trouble with her uterus, female organs, and upon examination he discovered that she had some kind of abdominal tumor, with symptoms of severe hemorrhage at menstrual periods. On May 10th the physician advised a surgical operation. The witness testified also that benign tumors are not necessarily dangerous; that people have them and live a long time; that the only definite way to determine whether or not a tumor is benign or malignant is by a microscopic examination.

The evidence for the appellee consisted of that of the beneficiary, his sister, and his brother. The effect of their testimony was that at the time the policy was issued their mother did not have a muddy, pale or jaundiced skin, and she appeared to be a strong, healthy woman. The daughter testified that her mother at no time passed an unusual amount of blood.

There are several questions presented for our review. However, we will confine our discussion, in the main, in response to one assignment of error.

After a very careful study of this record, sitting en banc, we have reached what appears to us to be the inevitable conclusion that the verdict of the jury is contrary to the great preponderance of the evidence. The motion for a new trial, therefore, should have been granted.

We are not unmindful of our task to pass on all questions which may reoccur in the event of another trial.

■ We hold that a jury question was presented on the plea setting up cancer as a defense. The testimony of the experts as to the length of time this malady had existed was predicated on opinion. The evidence as a whole created a conflict as to whether or not the insured was, in fact, afflicted with cancer at the time the policy was issued.

By the terms of the policy no liability accrued unless at the time and date the policy was issued the insured was in sound health.

In view of the probability of another trial and the factual issues that may be incident thereto, we have concluded that judicial caution demands that we leave this question undecided. A discussion relative thereto will be pretermitted.

We turn to a consideration of the inquiry which is decisive of this appeal.

We have with care attempted to set out the tendencies of the evidence in much detail.

■ As we have indicated, there are two theories of non-liability. If we find that the verdict of the jury is contrary to the great preponderance of the evidence as it is related to either of these theories, then the judgment below must be reversed. We are not required to direct our views to factual issues presented by proof of any particular plea.

■ It is to be noted that the insured was operated on thirteen days after the date the policy was issued. Without dispute in the evidence the operation disclosed that the insured was at that time afflicted with a very serious cancer. The malady had become so widespread in infection, and so many vital organs were involved, that a removal of the cancerous tumor was deemed unsafe and unwise. The incision was closed, and the patient died thirty-one days later.

The evidence speaks for itself. It bears convincing conclusions that to allow the verdict to stand would be wrong and unjust.

■ We are fully aware that appellate courts should move with great care and caution before disturbing a verdict of a jury. We are equally cognizant of our duty to safeguard and protect the vested right of a review of this finding by motion for a new trial.

After allowing all due presumptions in support of the verdict of the jury and the ruling of the judge on the motion for a new trial, we are clearly convinced that the verdict is opposed to the great preponderance of the evidence.

Each case must be decided on the merits of its own facts, and it is rarely possible to find any two which are in factual counterpart. The following authorities bear some analogy, at least the conclusions therein reached are influencing. National Life & Accident Ins. Co. v. Spigener, 225 Ala. 655, 144 So. 813; Liberty National Life Ins. Co. v. Trammell, 33 Ala.App. 275, 33 So.2d 479; Independent Life Ins. Co. v. Carroll, 219 Ala. 79, 121 So. 88; National Life & Accident Ins. Co. v. Sherman, 222 Ala. 358, 132 So. 876; Metropolitan Life Ins. Co. v. Usher, 226 Ala. 314, 146 So. 809; Commonwealth Life Ins. Co. v. Brandon, 232 Ala. 265, 167 So. 723; National Life & Accident Ins. Co. v. Cummings, 27 Ala. App. 355, 172 So. 353; American Life Ins. Co. v. Williams, 234 Ala. 469, 175 So. 554, 112 A.L.R. 1215.

The judgment of the nisi prius court is ordered reversed and the cause is remanded.

Reversed and remanded.