Mutual Benefit Life Ins. Co. v. Daviess' Ex'r.

CASE 83—PETITION ORDINARY—NOVEMBER 22.

## Mutual Benefit Life Ins. Co. v. Daviess' Ex'r.

APPEAL FROM MERCER CIRCUIT COURT.

1. LIFE INSURANCE—SUICIDE WHILE INSANE.—A policy of insurance provided that "in case the insured shall die by his own hands * * * this policy to be null and void, except that in case he shall die by his own hands while insane, the amount to be paid by this company on the policy shall be the amount of the premium actually paid thereon, with the interest." The insured was found dead with a pistol by his side, from which the ball which caused his death was fired. In this action to recover the full amount of the policy the plaintiff admitted that the insured was insane at the time of his death, but denied that he died by his own hand. *Held*—That the mere fact that the insured was insane when he took his life, if he did so, is not of itself sufficient to defeat the recovery. In order to defeat a recovery the defendant must show that the insured knew the physical nature of the act he was about to commit, and that it would result in self-destruction; but

Mutual Benefit Life Ins. Co. v. Daviess' Ex'r.

it is not necessary for the defendant to show that he was either legally or morally responsible for his acts.

It was error in this case to instruct the jury that the law presumes that the insured did not intentionally shoot and kill himself, as no legal presumption arises on such an issue.

2. MISREPRESENTATIONS.—A misrepresentation by the insured in his application will not avoid the policy unless material to the risk.

The false statement of the insured that he never had "vertigo" was not material, as his trouble was merely temporary, the result of indigestion, and did not affect his general health.

3. SAME—ESTOPPEL.—Where an insurance agent, with a full knowledge of the facts, causes the assured to make an untrue answer to a question propounded in his application, the company is estopped from relying upon the misrepresentation, in the absence of fraud or bad faith on the part of the assured.

DURHAM & JACOBS FOR APPELLANT.

1. The question as to whether the insured had had vertigo should have been submitted to the jury. When from the evidence any reasonable deduction can be drawn as to the truth of any alleged fact, it is within the province of the jury, and not of the court, to decide the question. (Fightmaster v. Beasly, 7 J. J. M., 411; Stephens v. Brooks, 2 Bush, 138.)

2. The agreement that the falsity of any statement in the application shall avoid the policy, excludes from the court and jury the question of its materiality. The inquiry and answer are tantamount to an agreement that the matter inquired about is material. (May on Insurance, secs. 183, 184; Campbell v. New England Mut. Life Ins. Co., 98 Mass., 381; Price v. Phœnix Mut. Life Ins. Co., 17 Minn., 497; s. c., 10 Am. Rep., 166.)

But if the court will not assume the materiality from the "frame of the contents of the paper," it is a question for the jury to be inferred from the facts and circumstances in evidence.

3. The insured had notice that he could not act in making his answers upon any representation or explanation of any agent or solicitor, and, therefore, the plaintiff can not rely upon any such representations or explanations to estop the company from taking advantage of false answers of the insured. (N. Y. Life Ins. Co. v. Fletcher, 117 U. S., 528; Gailbraith's Administrator v. Arlington Mut. Life Ins. Co., 12 Bush, 29.)

Insurance Co. v. Wilkinson, 13 Wall., 222, commented on.

4. There can be no presumption of law as to the intention or acts of an insane man, and, therefore, it was error in this case to instruct the jury that it was to be presumed that the insured did not intend to take his own life.

Mutual Benefit Life Ins. Co. v. Daviess' Ex'r.

5. Different theories as to the liability of the insurance company in case of "suicide" by the assured, or "death by his own hands," when insane, where the policy provides for exemption of the company on account of suicide, but does not use the qualifying words "sane or insane." (May on Insurance, sec. 307; Borradaile v. Hunter, 5 M. & G., 648; Clift v. Schuabe, 54 Eng. Com. Law, 437; Deane v. American Life Ins. Co., 4 Allen, 96; Knickerbocker Ins. Co. v. Peters, 42 Md., 414; Breastead v. Farmers' Loan & Fruit Co., 4 Hill, 73; Terry v. Ins. Co., 15 Wall., 580.)

6. Where the words "suicide" or "died by his own hands," are qualified by the words "sane or insane," the company is not liable if death results from insanity, even though the insanity be total. (De Gorgoza v. Knickerbocker Life Ins. Co., 65 N. Y., 232.)

To hold that by this clause the question of felonious suicide only is eliminated, is to give no meaning to the word "insane."

7. The burden is upon the plaintiff to show such a degree of insanity as will make the company liable. (Terry v. Ins. Co., 15 Wall., 582; Caverston v. Conn. Mut. Life Ins. Co., 3 Ins. Law Journal, 113; Wharton's Law of Evidence, sec. 356.)

8. If the party has enough intelligence to use a loaded pistol, the intention to take his own life is shown in the adaptation of the means to the end. (Biglow v. Berkshire Ins. Co., 93 U. S.)

WICKLIFFE AND BELL AND JOHN B. THOMPSON FOR APPELLEE.

1. The court did right in taking from the jury the question as to whether the insured had vertigo, as there was no proof that he had vertigo, or if so, nothing to show that it was serious, or any thing more than temporary. (Conn. Mut. Life Ins. Co. v. Union Trust Co., 112 U. S., 250.)

This question falls under the head of representations, not warranties, and before the defendant could escape liability it must prove that the assured misrepresented the fact, and that it was material. (Germania Ins. Co. v. Rudwig, 80 Ky., 235.)

2. Defendant was estopped to plead misrepresentations on the subject of vertigo, its agents having represented to the insured that his trouble was immaterial and that he could truthfully answer "no." (Union Ins. Co. v. Wilkerson, 13 Wall., 226; Bebee v. Ins. Co., 25 Conn., 51; Lycoming Ins. Co. v. Schollenberger, 44 Pa., 259; Beal v. Ins. Co., 16 Wis., 241; Davenport v. Ins. Co., 17 Ia., 276; Savings Bank v. Ins. Co., 31 Conn., 517; Horowitz v. Ins. Co., 40 Mo., 557; Ayres v. Ins. Co., 17 Ia., 176; Howard Ins Co. v. Bruner, 23 Pa., 50; Rowley v. Ins. Co., 36 N. Y., 550; Bliss on Life Insurance, secs. 80, 82, 280, 290, 291, 292 )

And this is true although the policy or the by-laws of the company provide that the person preparing the application shall be the agent

of the applicant. (Bliss on Life Insurance, sec. 81; Minor v. Phœnix Ins. Co., 27 Wis., 693; Clark v. Union Mut. Ins. Co., 40 N. Y., 333; Mesters v. Madison Co. Mut. Ins. Co., 11 Barb., 624; Protection Ins. Co. v. Harmer, 2 Ohio St., 452; May v. Buckeye Ins. Co., 25 Wis., 291.)

3. The court was right in saying in the instructions that the burden was on appellant to prove that Daviess intentionally took his life, knowing that the act employed would, and intending thereby to, produce his death. (Ins. Co. v. Gudly, 100 U. S., 614; Phillips v. Ins. Co., 26 La. Ann. Rep., 405; Schulter v. Ins. Co., 40 Ohio, 217; Caverston v. Conn. Mut. Life Ins. Co., 3 Ins. Law Jour., 113; Stormont v. Waterloo, L. and C. Ass. Co., 1 F. & F. (Eng.), 22.)

4. The phrase "die by his own hand while insane," as used in the policy sued on, does not include an involuntary death, whether it be from accident, want of mind and intention, or irresistible impulse. To exempt the company from liability the assured, although insane, must have sufficient powers of mind and reason to understand the physical nature and consequences of his act. (Pierce v. Travelers' Ins. Co., 34 Wis., 389; Biglow, Adm'r, v. Berkshire Life Ins. Co., 3 Otto,· 284; Adkins v. Columbia Life Ins. Co., 70 Mo., 27; Bliss on Life Insurance, 2d ed., p. 373, sec. 228.)

As to the meaning of the phrase "die by his own hand," unqualified by the word "insane." (Borradaile v. Hunter, 5 Man. and Gr., 639; Clift v. Schuabe, 3 Man., Gr. and Scott, 438; Dufauer v. Prof. Life Ins. Co., 25 Beav., 599; Terry's Case, 15 Wall., 580; Life Ins. Co. v. Broughton, 107 U. S., 121.)

5. An insane man cannot be said to have intention and knowledge as to the physical consequences of his act, or as to its moral quality, and if he dies by a wound self-inflicted, such a death is, in the meaning of the law, an "accident." (Accident Ins. Co. of North America v. Crandall, 120 U. S., 527; Breasted v. Farmers' Loan and Trust Co., 4 Hill, 73; Easterbrook v. Union Life Ins. Co., 54 Me., 224; Vanzant v. Mut. Benefit Life Ins. Co., 3 Ins. Law Jour., 208; St. Louis Life Ins. Co. v. Graves, 6 Bush, 268; Crandall v. Accident Life Ins. Co., 27 Fed. Rep , 41; Manhattan Life Ins. Co. v. Broughton, 109 U. S., 131.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

On the first of March, in the year 1881, Jno. B. T. Daviess, a resident of the town of Harrodsburg, insured his life in the Mutual Benefit Life Insurance Company for the sum of ten thousand dollars, the amount of

insurance, in case of his death, to be paid to his personal representative.

On the morning of the twenty-eighth of March, in the year 1881, Daviess was found dead in one of the stalls of his stable, a short distance from his dwelling, with a pistol by his side, from which, as the proof conclusively shows, the ball was fired causing his death. The ball entered the back part of his head near the right ear, and came out in front near the top of the forehead. The preliminary proof was made as the policy required, and the company declining to pay the insurance, this action was instituted by his executor.

One of the conditions of the policy is: "That in case the insured shall die by his own hands, or in consequence of a duel, or by reason of intemperance, * * * then this policy to be null and void, *except that in case he shall die by his own hand while insane, the amount to be paid by the company on this policy shall be the amount of the premiums actually paid thereon, with the interest.*"

It is pleaded by way of defense to the action that the insured took his own life, with his own hand, by shooting himself with a pistol, and that he was insane at the time. The defense also tendered the amount of the premiums paid with the interest, in compliance with the terms of its policy, insisting that this was the extent of the recovery, in the event other defenses that were interposed were held insufficient.

The other grounds of defense relied on consist in certain false statements alleged to have been made by the insured in response to questions propounded in the application for insurance, only one of which will be

vol. 87—35

considered, as all the others seem to have been aban-
doned by the defense, or at least no evidence intro-
duced to sustain them.

In the written application the insured was required
to answer this question : "Have you had since child-
hood gravel, gout, *vertigo*, disease of the ·heart, con-
sumption, bilious colic?" etc.   To all of which the
insured responded no.   It was alleged that the insured
did have vertigo from childhood, and that his answer
was, therefore, untrue, and being material to the risk,
or made so by the contract between the insured and the
company, the policy for that reason is void.   There
was a general denial of these averments by the exec-
utor, and in the reply it is averred that if the assured
had such a complaint it was not material to the risk,
and besides, he further alleged, and the fact is clearly
proven, that the insured, at the time he obtained the
insurance, made a full and frank statement to the agents
of the company as to his condition by informing them
that, prior to the date of the insurance, he had swim-
ming or dizziness in the head, caused by indigestion,
and being informed by the agents that the question
referred to diseases of a chronic character, and that he
(the insured) could truthfully say *no ,* and for that rea-
son made such a response.   On this branch of the case
the court below declined to give an instruction asked by
the company, and in effect told the jury that no testi-
mony had been introduced sustaining this part of the
defense, or, if so, the company was estopped from rely-
ing on this erroneous statement to prevent the recovery,
because made in good faith by the insured, and at the
instance of, or in explanation of the meaning of the

question given at the time by the agent of the defendant.

The first question we will consider is, did the court err in taking from the jury the consideration of this particular defense? The only witness introduced by the defense on this subject was Dr. Price, who had been the family physician of the insured, and testifies that some three years before this insurance was obtained the insured complained of indigestion and had more or less vertigo. That the insured went to Crab Orchard and remained a short time, returning feeling quite well. The witness did not consider him seriously affected, and, so far as he knew, Daviess had no recurrence of the complaint, and he thought it merely temporary.

While vertigo "is swimming in the head," it must be of such a character as renders the insurance more hazardous, by affecting in some way the general health of the insured. If merely temporary, the result of indigestion, or from some cause that soon ceases to exist, and the condition of the insured fully restored, it can not be regarded as material to the risk the company has assumed. By the express provisions of the act of 1874, February 4, such statements are to be held as mere representations and not warranties, and before a recovery can be prevented on such a plea, the misrepresentation must not only be made, but it must further appear that it was material, and in fact, regardless of the act of February, 1874, the defense on this branch of the case is not sustained, as in the defendant's own testimony no misrepresentation was made. (Germania Ins. Co. v. Rudwig, 80 Ky., 223.) It also appears from the testimony that the insured explained to the agents

that he occasionally had swimming in the head, and was told by them that his trouble was *immaterial*, and that he could truthfully answer the question no. This testimony is uncontradicted, and there was, therefore, no issue of fact on this branch of the defense to try. The appellants, by their own explanation, or that of their agents, with a full knowledge of the facts, caused the answer to be made, and will be estopped from making the defense in the absence of fraud or bad faith on the part of the insured. (Insurance Co. v. Wilkinson, 13 Wallace, 226 ; Rowley v. Ins. Co., 36 New York, 550 ; Bliss on Life Insurance, 80 ; Beal v. Ins. Co., 16 Wis., 241 ; Horwitz v. Ins. Co., 40 Mo., 557.)

In the second paragraph of appellant's answer it is averred that the insured, Daviess, took his life with his own hand by shooting himself in the head with a pistol, and that at the time of the shooting he was insane. The reply admits the death, and that Daviess was then insane, but denies that he died by his own hand. On this issue the case went to the jury under general instructions, and also with the direction, at the instance of the defendant, to return a special verdict. On the motion of the defendant two questions were submitted to the jury for answer—

First. Was the pistol shot wound of which J. B. T. Daviess died inflicted by himself? To this the jury responded Yes.

Second. If so, did he, at the time he inflicted the wound, know the physical nature of the act, and intend by it to cause his own death? To this the jury responded No.

After propounding the special interrogatories to the

jury the court gave, at the instance of counsel for the plaintiff, the following instruction: "The law presumes that the deceased did not die by his own hands; that he did not intentionally shoot and kill himself; and the burden of proof is on the defendant to satisfy the jury, from the evidence, that he did intentionally shoot and kill himself." The same idea is embodied in instruction No. 2, given for the plaintiff.

To the giving of each of the instructions objection was made and an exception taken. In the diversity of opinion to be found in the text-books, as well as the reported cases, as to the effect the mental condition of the insured at the time he takes his life is to have in determining the question of liability on the part of the company in cases of this character, we have found no rule of law or precedent upon which to base these instructions for the plaintiff. The presumption to be indulged, if any, in reference to an insane man, is, that he will commit irrational acts, and it is this peculiar conduct and action that enables the ordinary observer to perceive his mental derangement. No legal presumption arises, however, on an issue like this, either the one way or the other, and the jury should be left to determine, from all the evidence before them, whether the insured, at the time of the killing, had mind enough to know that if he fired the pistol ball through his head it would likely produce death, and fired the shot with that intention. If the insured had such knowledge, and fired the pistol for the purpose of taking his life, in that event the extent of recovery must be confined to the amount of premiums paid with the interest, as provided by the

policy.    The burden of showing the condition of the
mind of the insured at the time is on the defense.

The plea for the defense was in avoidance of the
policy, or such as would limit the recovery to the
amount of premiums paid.    The mere fact that the in-
sured was insane when he took his life is not, of
itself, sufficient to defeat the recovery.    There are
many phases of insanity.    The mind may become so
wrecked as to render one incompetent to form a pur-
pose, or to execute that purpose when formed; one
may be rational on some subjects and insane as to
others, or his mind in such a condition as to relieve
him from moral as well as legal responsibility, and
still have mind enough to know that to shoot himself
through the head would result in self-destruction, and
if with reason enough to know this fact, he commits
the act with the intent to take his life, it is a bar to
the recovery.

While the fact of insanity and the circumstances
connected with the killing should go to the jury on
this question of intention, it is necessary for the de-
fense not only to establish the insanity of the insured,
if denied, but that he fired the fatal shot with the
intention to take his life ; for if fired with this intent,
his knowledge as to the result of the act necessarily
follows.    Whether he was a moral responsible agent
or not is an immaterial inquiry.    His condition may
have been such as to exempt him from legal and
moral responsibility, and still he may have had rea-
son enough to know the physical nature of the act
he was about to commit.

This case is unlike that of the Life Insurance Com-

pany v. Terry, reported in 15 Wallace, 580. In that case the words of the policy were, "shall die by his own hands," and nothing more.

The court held in that case that the language used referred to an act of criminal self-destruction, and had no application to one insane, who in that condition took his life. The insured must have been guilty of a felonious suicide before the company could avoid liability on its contract of insurance.

We have been cited to many cases establishing the proposition that death by one's own hand when insane is an act done without mind to control it, and is only death by accident, and that when the act is not the result of thought or reason, should no more be the subject of punishment than if produced by accident. Those cases all arise where the words of the policy are, "if the insured die by his own hand, or shall commit *suicide*," in the latter case the court holding that suicide means "the deliberate purpose to end one's existence when in the possession and enjoyment of his mental faculties." (Breasted v. Trust Co., 8 N. Y., 299 ; Manhattan Life Ins. Co. v. Broughton, 109 U. S., 121.)

There is something more in the stipulations embodied in the policy before us than the language, if the insured die by his own hand. "*In case he shall die by his own hand while insane,*" the company agrees to refund the premiums, the policy fixing the amount of recovery.

The question of criminal self-destruction is not involved in the controversy, as the contract by its very terms is made to apply to the insanity of the insured.

The object in view in inserting such a clause in the policy may have been, and doubtless was, to avoid the effect of the decisions confining the meaning of the language, *die by his own hand*, to criminal self-destruction, or the word *suicide*, to the deliberate purpose of a sane man to take his own life. The company enters into a contract with the insured when perfectly rational, that if he should afterwards become insane and die by his own hand, the policy shall become void, or the company liable to return the premiums with the interest, and nothing more.

This is a reasonable contract, entered into between parties capable of contracting, and is neither against public policy or unjust to the parties who accept its terms. In the case of Bigelow v. Berkshire Life Insurance Company, 93 U. S., 284, the Supreme Court, in a case similar to the one before us, Mr. Justice Davis delivering the opinion, said: "Nothing can be clearer than that the words *sane or insane* were introduced for the purpose of excepting from the operation of the policy any *intended* self-destruction, whether the insured was of sound mind or in a state of insanity." It may now be regarded as well-established, that intentional self-destruction will avoid a policy containing conditions like this, whether the act was committed voluntarily or from irresistible impulse, unless the mind of the insured was so far gone when he took his life as to render him unconscious that he was taking his life at the time he committed the act.

In the case of Pierce v. Travelers' Life Insurance Company, 34 Wis., 389, the condition in the policy was in these words: "Shall die by suicide, felonious.

or otherwise, sane or insane." It was held that the language used could not be construed to mean a criminal self-destruction, and such a condition released the company from liability when the self-destruction was intentional.

It results, therefore, that if the insured fired the fatal shot, and had sufficient mental power at the time to know that it would take his life, and fired the pistol with that intention, the recovery in this case is limited to the premiums paid with the interest, while, on the other hand, if the firing of the pistol was not intentional, because of the unconsciousness on the part of the insured that such an act would take his life, the recovery must be had of the principal sum.

The shooting in such a case must be regarded as the result of accident, as much so as if the pistol had gone off unexpectedly to the insured and killed him. In the discussion of the legal question applicable to the mental condition of the insured, we are not to be understood as directing the court to take from the jury the question as to whether the killing of the insured was the result of accident in the ordinary meaning of that word. If the act was unexpected or unforeseen, then there is no obstacle in the way of recovery. The instructions asked by the plaintiff and refused, failed to embody the law of the case, and, therefore, no error existed in refusing to give them.

The court below having erred, however, in instructing the jury as asked by the plaintiff—that the law (the insanity of the insured having been admitted) presumed that the deceased did not die by his own

hands, and also presumed that he did not intentionally kill himself, were errors prejudicial to the substantial rights of the defense, and, therefore, this judgment is reversed, and the cause remanded, with directions to award the appellant a new trial, and for proceedings consistent· with this opinion.