186 So. 583

## LIFE INS. CO. OF VIRGINIA v. MANN.

### 4 Div. 416.

Court of Appeals of Alabama.

Nov. 1, 1938.

Rehearing Denied Jan. 24, 1939.

Denson & Denson, of Opelika, for appellant.

J. W. Brassell, of Phenix City, for appellee.

RICE, Judge.

This suit is based on an insurance policy in the amount of Two Hundred Sixty-five ($265) Dollars which was issued by The Life Insurance Company of Virginia to Jesse J. Mann and delivered to him on January 21, 1935. Application for this policy was made in the early part of January, 1935. Georgia Mann, appellee herein, was the beneficiary named in this policy, and was the plaintiff below.

On or about May 28, 1935, assured, Jesse J. Mann, was committed to the Alabama Insane Hospital at Tuscaloosa, Alabama, and died an inmate thereof on September 9, 1935. There was evidence that he died from Meningo-encephalitis, and appellant contends that this disease was brought on or caused by syphilis.

Appellee made due proof of death on forms supplied by appellant, and the record shows that the premiums had been regularly paid to appellant. The evidence of appellee also tends to show that assured was in good health when the policy was applied for and issued, and that she never knew of appellee having syphilis.

■ The defendant filed a plea of the general issue in April, 1937, and the judgment entry dated September 15, 1937, refers to the plea of the general issue only, and no reference is made therein to any special pleas. However, there appears in the record certain pleas setting up in varying language that Jesse J. Mann misrepresented the condition of his health and that he had syphilis at the time the policy was applied for and was issued and delivered, and that for these reasons appellee should not recover.

"Plaintiff, to establish a prima facie case, must prove: (1) The existence of the contract or policy sued on; (2) the death of the insured or the happening of the event provided for in the policy; and (3) the giving of notice and proof of death, as required by the policy." National Life & Accident Ins. Co. v. Winbush, 215 Ala. 349, 351, 110 So. 571, 572; United Ben. Life Ins. Co. v. Dopson, 26 Ala.App. 452, 162 So. 545; Union Mut. Ins. Co. v. Peavy, 24 Ala.App. 116, 133 So. 300, 302.

■ Unquestionably in this case plaintiff (appellee) made out a prima facie case by the evidence introduced.

Section 8364 of the 1923 Code of Alabama reads as follows: "No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

The Supreme Court of Alabama in construing the above Section has said as follows: "To avoid the policy, unsound health must be misrepresented with intent to deceive and as being material to the risk, or as materially increasing the risk of loss (Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; Life Ins. Co. of Va. v. Newell, supra [223 Ala. 401, 137 So. 16]). There are types of fatal maladies of which the courts take judicial knowledge such as 'tuberculosis and cancer,' as being material to the risk of insurance; the courts take no such judicial knowledge of or as to the several forms of diseases, such as syphilis, cirrhosis of the liver, or other ailments alleged in the pleas." Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 194, 146 So. 524, 525.

■ Nor do the courts take judicial knowledge that syphilis increases the risk of loss. Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841.

■■ The authorities are also uniform to the effect that the burden was on appellant to show that the insured was afflicted with a disease or was not in sound health when the policy was issued, and that by the term disease as regards life insurance a serious illness which has impaired the constitution and left in its wake some organic or chronic effect undermining the general health is meant.

The Supreme Court in one case has stated the rule in the following language:

"The diseases pleaded in these pleas as a breach of the alleged warranty not being as a matter of common knowledge, such as would increase the risk, to sustain the plea the defendant had the burden of showing that the insured was afflicted with the alleged diseases; that they were serious, and such as affected the general soundness of his health. National Life & Acci-

dent Ins. Co. v. Bridgeforth [220 Ala. 314], 124 So. 886; Padgett v. Sovereign Camp, W. O. W., 218 Ala. 255, 118 So. 456; Massachusetts Mut. Life Ins. Co. v. Crenshaw, supra [195 Ala. 263, 70 So. 768]; Providence Savings Life Assurance Society v. Pruett, 141 Ala. 688, 37 So. 700; Mutual Life Ins. Co. of New York v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649.

"The term 'disease' means more than a temporary disorder; it denotes a serious illness, which has impaired the constitution or left in its wake some organic or chronic effect undermining the general health. Joyce on Insurance, § 1848; Logan v. Provident Savings Life Assurance Society, 57 W.Va. 384, 50 S.E. 529; Peterson v. Modern Brotherhood of America, 125 Iowa, 562, 101 N.W. 289, 67 L.R.A. 631; Cushman v. United States Life Insurance Co., 70 N.Y. 72; note 37 C.J. 460, treating 'Scope and meaning of the word "disease."'

"'High blood pressure,' like vertigo, is more of a symptom than a disease. Mutual Benefit Life Ins. Co. v. Daviess' Ex'r, 87 Ky. 541, 9 S.W. 812. And it has been held that an anemic murmur of the heart 'indicating no structural defects,' but arising from temporary debility or weakness, is not a bodily infirmity. Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, 7 C.C.A. 581, 22 L.R.A. 620.

"And, likewise, that one who has 'kidney trouble' from temporary ailments or causes is not necessarily affected with a 'kidney disease.' Hogan v. Metropolitan Life Ins. Co., 164 Mass. 448, 41 N.E. 663; Continental Life Ins. Co. v. Yung, 113 Ind. 159, 15 N.E. 220, 3 Am.St.Rep. 630.

"The evidence made the case one for the jury as to whether the insured's ailments were serious diseases affecting his general health, and charges 27, 28, and 29 were refused without error." Independent Life Ins. Co. v. Butler, headnotes 5, 6 and 7, 221 Ala. 501, 504, 129 So. 466, 469. See, also, West Publishing Company's Alabama Digest, Insurance, ☞646(3).

▮ Giving full effect to defendant's pleas—and pretermitting consideration of the fact that all of the defendant's special pleas setting up breach of the terms of the policy by the insured were filed in the office of the Clerk, and that the record does not disclose that the filing of these additional pleas was drawn to the attention of the trial court, or that issue was ever joined on them—after painstaking care

and full analysis of all the evidence in this case, we are forced to the conclusion that the trial court correctly refused the general affirmative charge requested by defendant and properly submitted the case to the jury.

It was certainly a question for the jury to decide as to whether insured had the disease from which he died at the time the policy was issued and also as to whether such disease, if he had it, increased the risk of loss. Dr. Ashby Floyd testified that the disease from which insured died was not always caused by syphilis; that a man could be in sound health in January, 1935, and could then develop the disease afterwards at any time and that sometimes alcoholism caused it and that insured could have been in sound health at the time the policy was issued and that his condition could then have developed from anything else he might have had after the policy was issued except syphilis, but that if it resulted from syphilis, he would have had to have had syphilis theretofore; that Meningo-encephalitis is a condition or disease of the covering of the brain and that it is produced by different things; that it could come from syphilis or alcoholism or other causes.

The following excerpt from the opinion by our Supreme Court in the Chambers Case above referred to is here apt:

"The several doctors testified it was possible for assured to have been in sound health when the policy was delivered, and to have died in December thereafter with one of the diseases indicated, though some or one of them said this was not probable; they all said the several diseases or condition therefrom, with which she died, could be caused by other things than syphilis, and could have been caused in a short time by an acute and aggravated alcoholism.

"The testimony of appellee tended to show that assured was in sound health at the time of the application and delivery of the policies sued upon. This is shown by defendant's own agent and his certificate, by the husband of the assured, and by Anna Jeffries.

"From any phase of the evidence it was a jury question under our rules." Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 196, 146 So. 524.

While we may concede that appellant has the testimony of more doctors than did appellee, at the same time there was ample medical and lay evidence before the jury

in behalf of appellee for the jury to reach the verdict it did. Nor can we say that the weight of the evidence was in favor of appellant. The case being one for jury decision, the trial Judge, who observed the demeanor of the witnesses on the stand and their interest in the case and their mode of testifying, overruled the motion for a new trial, and we cannot say that he was in error in so doing. We, therefore, hold that the trial court properly refused to defendant the general affirmative charge; and that there was no error in not granting appellant a new trial; and that this case should be affirmed.

Affirmed.