28 So.2d 318

BROWN–SERVICE INS. CO. v. WRIGHT.

4 Div. 957.

Court of Appeals of Alabama.

Dec. 17, 1946.

Ball & Ball, of Montgomery, for appellant.

Lawrence K. Andrews, of Union Springs, for appellee.

HARWOOD, Judge.

Mrs. Mattie Wright, as beneficiary of an insurance policy issued by the Brown-Service Insurance Company on the life of Herman J. Hough, her brother, sued the said company for the amount of the policy, i.e., five hundred dollars.

The complaint was in code form. The defendant's plea set up that the policy contained the following provisions:

"Limitation of Insurance: * * * The liability of the company shall be limited to the return of the premiums paid on the policy if (1) * * * at the date hereof the insured is not alive and in sound health * * *." The plea further alleged that the policy was issued on 7 June 1943, and that within two years the assured died as a result of stricture of the urethra, from which he was suffering prior to the issuance of the policy, which increased the risk of loss under the policy, and that the premiums paid were $65, which were tendered and paid into court.

Issue was reached on the plea. The case was tried before a jury which returned a verdict in favor of the plaintiff and the court entered its judgment pursuant thereto. The defendant below perfected its appeal to this court.

Mrs. Wright, the plaintiff below, and beneficiary under the policy testified that she was the sister of the insured, Herman J. Hough, and that he had no wife or children; that the insured died on 4 April 1945; and that she was the owner of and beneficiary of a policy issued on said Herman J. Hough by the defendant company which had been duly notified of the insured's death.

Mrs. Wright identified the above mentioned policy which was received in evidence as an exhibit.

The plaintiff thereupon rested.

The defendant's evidence consisted of a certified copy of the death certificate pertaining to Herman J. Hough, and of the testimony of Dr. T. B. Hubbard, a practicing physician of Montgomery.

Dr. Hubbard testified by deposition that he attended the insured in February, 1945. That he was in miserable shape generally and obviously very ill. At that time the insured had two big tubes protruding from an opening in the lower part of his abdomen from which was draining pus and urine. In addition he had a perineal sinus, or opening through which urine drained. The anterior portion of insured's urethra was practically obliterated by strictures. The sinus had the appearance of having been there a long time, and while he, Dr. Hubbard, could not say definitely how many years, according to the history given to him by the insured he had had this condition several years, "and had been voiding through this thing for years." Dr. Hubbard testified that this condition increased the risk to insured's health and the danger of his dying.

The insured left Dr. Hubbard's hospital on 12 March, 1945, but returned on 16 March 1945. A perineal urethrotomy operation was performed on 19 March 1945 with the idea that such operation would furnish a drain for the bladder. The patient never got any better practically, and died on 4 April 1945.

The certified copy of the death certificate covering insured, and executed by Dr. Hubbard, was received in evidence. The portions of said certificate, material to this case were those showing:

"Immediate cause of death—stricture of urethra. Duration 10 years."

A stipulation signed by the attorneys for the respective parties to the suit showing that the premiums paid on said policy amounted to $65 was received in evidence. The defendant then rested.

In rebuttal the plaintiff below called as a witness Dr. W. Hill McCaslan. Dr. Mc-Caslan testified that he was a practicing physician of Union Springs. He was called to see Mr. Hough on 5 February 1945 and found him suffering from an acute occlusion of the urethra with retention of the urine. He treated him that night and the next day Mr. Hough was sent to the Veteran's Hospital in Montgomery. Dr. McCaslan testified he did not know whether Mr. Hough had had a stricture of the urethra previous to the occasion on 5 February 1945 when he was called as he had never been consulted prior to that time. Dr. McCaslan further testified that a stricture of the urethra would not necessarily undermine a person's health but that he agreed with Dr. Hubbard that where there is a stricture of the urethra there is danger of stoppage and it therefore does increase the risk.

The sole issue involved in this case was the trial court's refusal to give the general affirmative charge, with hypothesis as to recovery of the amount of the premiums, requested in writing by the defendant.

■ The proviso in the policy limiting the insurer's liability to the return of the premiums if the insured was not at the date of the policy alive and in sound health is a binding part of this contract of insurance. Champion v. Life & Casualty Ins. Co., 25 Ala.App. 101, 141 So. 363; Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16.

Dr. Hubbard testified that when he saw the insured in February of 1945 the insured was then suffering from a physical disability which appeared to have existed a long time, and according to the history given him by the insured it had existed *several* (italics ours) years. In the death certificate executed by Dr. Hubbard he gave the duration of this condition as ten years.

■ In Einstein, Hirsch & Co. v. Marshall and Conley, 58 Ala. 153, 158, 29 Am.Rep. 729 the word "several" is defined as meaning more than two, but not very many, and in the above mentioned case it was held to include as many as seven. In view of Dr. Hubbard's statement in the death certificate executed by him that in-

sured's affliction was of ten years duration it would seem probable that he meant that insured's condition had existed for that length of time in view of his use of the word "several." Regardless, at its minimum "several" means more than two, and since the policy was issued on 7 June 1943, and the insured died on 4 April 1945, some two months less than two years, we must necessarily conclude under the evidence presented that insured's condition existed at the time of the issuance of the policy.

While Dr. McCaslan expressed no opinion as to the duration of the insured's disability he concurred in Dr. Hubbard's view that insured's disability was of a nature that increased the risk to his health.

 A stipulation of the type contained in this policy, that the liability of the insurer is limited to the return of the premiums paid on the policy if, at the date thereof the insured is not alive and in sound health, is a warranty within the meaning of Section 6, Title 28, Code of Alabama 1940. Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714, and cases therein cited; Life Ins. Co. of Virginia v. Newell, supra.

■ While the insured was not suffering from a malady, such as tuberculosis or cancer, of which the courts take judi cial notice as being material to the risk of insurance (see Life Insurance Co. of Virginia v. Mann, 28 Ala.App. 425, 186 So. 583, certiorari denied 237 Ala. 253, 186 So. 586), yet under the uncontroverted evidence in this case the insured was, on the date of the issuance of the policy, afflicted with a physical disability, and this disability continued unto and was the cause of his death. Not to conclude that such disability affected the risk of loss would be to deny all inferential facts established by the evidence. Life Ins. Co. of Virginia v. Newell, supra.

It is our opinion therefore that the trial court erred in refusing to give the written affirmative charge with hypothesis requested in writing by the defendant below, and that this cause must be reversed and remanded.

Reversed and remanded.