33 So.2d 479

### LIBERTY NAT. LIFE INS. CO. v. TRAMMELL.

6 Div. 408.

Court of Appeals of Alabama.

Oct. 28, 1947.

Rehearing Denied Nov. 25, 1947.

Spain, Gillon, Grooms & Young, Ralph B. Tate and John P. Ansley, all of Birmingham, for appellant.

Lipscomb & Brobston, of Bessemer, and D. G. Ewing, of Birmingham, for appellee.

HARWOOD, Judge.

In the proceedings below the appellee sued the appellant on a policy of life insurance issued on the life of the appellee's then husband, John E. Trammell, the appellee being the beneficiary of said policy.

After demurrers to the complaint, which was substantially in code form were overruled, issue was joined on plea in short by consent, together with a plea of tender. Plaintiff below, appellee here, did not deny the tender.

Among the defenses created by the evidence presented by the appellant, defendant below, was that the insured was not in sound health on the date of the issuance of the policy sued on.

The jury trial below resulted in a verdict and judgment for the appellee for $962.66, plus interest in the amount of $61.28.

Motion for a new trial was duly made and by the court overruled, to which action the appellant reserved an exception.

At the trial below the named beneficiary, Mrs. Ethel C. Trammell, testified that she was the wife of the insured at the time of the issuance of the policy and at the time of insured's death. Since Mr. Trammell's death she has married Mr. Jack Ball.

The information contained in the application for the policy sued on was furnished to appellant's agent by her, and the premiums on the policy were paid by her. The issued policy was dated 6 November 1944, and Mr. Trammell, the insured, died 10 September 1945.

The policy itself was introduced in evidence by the appellee.

On cross examination this witness testified that she furnished the information put in the application for the policy, on questions asked by Mr. Childs, agent for the appellant; that the insured was present when the application was signed, but she did not recollect whether he was present when the information contained in the application was supplied by her; that at the time the information was given the insured was in good health, but had had a minor operation when a mole was removed from his chest by Dr. Rose, of Bechtel-McCone Company, insured's employer, the operation being performed after office hours. Six months after the operation by Dr. Rose the insured was again operated on by Dr. Drennen, in January 1945.

The application contained, among others, the following two questions and respective answers:

"Have you ever had cancer? Answer: No."

"Name all physicians attending appellant in last two years. Answer: None."

On further examination Mrs. Ball (Trammell) testified that she did not know when the mole which was operated on by Dr. Rose first appeared on insured's chest, that it was brown or black in color and about the size of a dime. She had never noticed any swelling around the mole, and had never heard insured complain about it, other than he sometimes complained of his shirt rubbing it. After the mole was removed by Dr. Rose the insured came on to his home. Some friends were present and the group chatted for about an hour. The next morning the insured went to his work.

On the proof of death filed by Mrs. Ball (Trammell) she listed melano sarcoma as the cause of death, and in answer to the question: "Give names of all physicians who attended deceased during last illness and two years prior to death, and dates of attendance," she listed the names of Dr. Earl Drennen and Dr. J. R. Horn.

A certified copy of the death certificate issued on insured's death was introduced in evidence by the plaintiff. The material portions of this certificate, signed by Dr. J. R. Horn, shows that the immediate cause of death was melano sarcoma, of eight months duration.

For the defense Dr. Rose testified that he saw the insured in his office in Birmingham in July 1944. At that time he had a growth, or mole as insured called it, on his chest. He told the insured it should be removed as it was of a dangerous type. The growth was flat, about an inch and a half long and an inch in diameter, with a black, slick surface. Its borders were elevated, and sort of rolled, with redness around, indicating the tumor was growing.

He removed the growth under local anesthetic, taking lots of skin with it and muscle down to the ribs, in an effort to leave the growth intact.

His diagnosis was that the growth was a malignant melanoma, or melano sarcoma, the terms being synonymous, known to a layman as a cancer. He sent the tumor

to the laboratory and their report verified his diagnosis.

Later when he removed the sutures there was an elevation of the skin, and the place appeared as if it might be an abscess. He concluded it was probably a regrowth of the tumor. He examined insured under the arms for evidence of enlarged glands, which would be signs that the cancer had spread to these glands. He found a shoddy area but could not definitely tell whether the glands in this area were enlarged.

This type of cancer spreads, not by roots growing, but by cells breaking off and distributing through the lymphatic glands, and occasionally in the blood vessels, and eventually into the whole blood stream. The liver is the first place it usually metastasizes. These broken off cells may be dormant for a considerable time before they begin their growth, but once begun the growth is rapid, like wildfire, and nothing can stop it.

This medical witness testified that assuming that insured died of melano sarcoma in September 1945, it was his opinion that he was suffering from the same disease during the period from July 1944 to September 1945; that the cancer that insured had when he came to see him was the thing that caused insured's death.

On cross examination Dr. Rose stated he could not remember definitely whether he talked after the operation with Mrs. Ball (Trammell) over the phone, that most of his conversations were with insured's mother. He had no recollection of telling Mrs. Ball (Trammell) that he was careful to remove all of the roots of the growth and found no cancerous growth.

Because relevant to the argument of appellee's counsel we set out the following portion of the cross examination of Dr. Rose:

"Q. Assuming, Doctor,—isn't it often true, or is it true, that where a mole is operated on, an ordinary, sound mole that has no elements of cancer or cancerous growth to it, but which is operated on but not operated on properly, or maybe some of the roots are left in there, that that of itself often produces cancer which for-

merly was not of a cancerous nature? A. It would never produce cancer.

"Q. In other words, no operation on the mole which was not cancerous, at the time it was operated on, would produce cancer? A. You said in an ordinary, sound mole. Now there is lots of different kinds of moles. We are speaking of what Mr. Trammell had, which was a malignant melanoma.

"Q. I am assuming for the moment,— just get away from one that is malignant to one that is not malignant. A. If it is not a malignant type it will never become malignant, any more so than maybe you have one on your lip.

"Q. Then one that is not malignant is never made malignant by an operation? A. Now excuse me. Certain types are potentially malignant always.

"Q. Well I say, excluding that type; one that is not malignant; excluding the type you say he had. A. All right.

"Q. An ordinary mole. There is no way for you to operate on that and leave some of the roots where it will cause cancer? A. A very remote possibility.

"Q. You have known of it? A. No, I have not.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Assuming that you had removed all cancer, and say that at the time after the operation that Mr. Trammell had no cancer, could he have contracted cancer after that? A. Yes."

The policy contained the following provision: "Effective Date—This policy shall take effect on its date of issue, provided the Insured is then alive and in sound health, but not otherwise."

▌ Such a proviso in the policy is a binding part of the contract of insurance, and is a warranty within the meaning of Section 6, Title 28, Code of Alabama 1940. To avoid the policy the unsound health must be such as to increase the risk of loss. Brown-Service Ins. Co. v. Wright, Ala. App., 28 So.2d 318;[1] Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16; Independent Life Insurance Co. v. Seale, 219 Ala. 197, 121 So. 714.

---

■ If the insured, at the time of the issuance of this policy was suffering from a disease which increased the risk of loss, the warranty in the policy as to sound health was breached, regardless of whether the insured knew of the presence of such disease. Aetna Life Ins. Co. v. Norfleet, 232 Ala. 599, 169 So. 225; New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277.

A brief recapitulation of the significant dates shows that the insured was operated on by Dr. Rose in July, 1944; on 6 November 1944 the policy was issued; in January 1945 he was operated on by Dr. Drennen; on 10 September 1945 insured died of cancer.

■ Cancer is a disease which the courts judicially know increases the risk of loss and if existing at the time of the issuance of a policy containing a warranty as to sound health per se breaches such warranty. Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335; Aetna Life Insurance Co. v. Norfleet, supra; Life Ins. Co. of Virginia v. Mann, 28 Ala.App. 425, 186 So. 583.

Dr. Rose testified unequivocally that when he operated on the insured in July 1944 he diagnosed insured's trouble as being melano sarcoma, and that his diagnosis was confirmed by laboratory tests. He further testified that assuming that insured's death resulted from cancer it was his opinion that insured was afflicted with this disease from July 1944 to his death in September 1945.

The only evidence contradictory of Dr. Rose's testimony is the statement in the death certificate showing the duration of insured's disease (melano sarcoma) to have been eight months; the testimony of Mrs. Ball (Trammell) that Dr. Rose informed her after the operation on deceased that he had removed all of the roots of the growth and had found no cancerous condition; and inferences that might be drawn from those portions of Dr. Rose's testimony on cross examination set out above.

■ Statements in death certificates are deemed prima facie true, unless contradicted or avoided by competent evidence. Liberty Nat. Life Ins. Co. v. Tellis, 226 Ala. 283, 146 So. 616; American Life Ins. Co. v. Williams, 234 Ala. 469, 175 So. 554, 112 A.L.R. 1215. It is our opinion that the statement of the duration of insured's cancer contained in the death certificate, true only prima facie, was overcome by the testimony of Dr. Rose.

Whether Dr. Rose gave hopeful reassurance to Mrs. Trammell, and this is disputed, as to the condition he found at the time of operating on the insured is in our opinion immaterial in view of Dr. Rose's positive testimony that he did in fact find a cancerous condition and that this condition existed in Dr. Rose's opinion at the time of the issuance of the policy, since awareness by the insured of such condition at the issuance date of the policy would not affect the validity of the warranty against such disease. Norfleet and Horton cases, supra.

Our interpretation of Dr. Rose's entire testimony concerning insured's condition and its probable prognosis is that Dr. Rose found a cancerous growth when he operated on insured in July, his clinical diagnosis being confirmed by laboratory tests. When he removed the sutures he found the wound in such condition as to indicate a continued growth of the cancer. He also found a shoddy area under the armpit, but was unable to say definitely that the glands were then affected; that operations for cancer of this kind with which insured was afflicted are successful only if the entire cancer is successfully removed, and if cells therefrom have not already broken off and travelled to other portions of the body. There is no way of knowing whether a cancer has been entirely excised other than by prognosis of the case after an operation. Assuming that insured died of cancer in September 1945, it was Dr. Rose's opinion that the cancerous condition found by him in July 1944 continued to this latter date.

We find nothing in that portion of Dr. Rose's testimony copied above from the record which is contradictory of his testimony just immediately set forth.

■ It is our opinion that the evidence introduced by the plaintiff below fails to dispute in its material aspect what in our

opinion was established by the defense by an overwhelming preponderance of the evidence, namely that the insured was suffering from cancer on the date of the issuance of the policy. Being of the opinion that there is no material conflict in the evidence on this point, but differing with the learned trial judge as to the interpretation of such evidence, the rule of presumption in favor of the conclusion of the trial judge does not prevail. Wright v. Price, 226 Ala. 591, 147 So. 886; American Life Ins. Co. v. Williams, 234 Ala. 469, 175 So. 554, 112 A.L.R. 1215.

For the reasons set out above it is our opinion that the lower court erred in refusing appellant's motion for a new trial on the grounds that verdict was contrary to the law and the evidence in that the great weight and preponderance of the evidence shows that the insured was not in sound health on the date of the issuance of the policy.

Reversed and remanded.