51 So.2d 167

### LIBERTY NAT. LIFE INS. CO. v. TRAMMELL.

#### 6 Div. 675.

Court of Appeals of Alabama.
May 3, 1949.

Rehearing Denied June 7, 1949.

Reversed after Remandment Feb. 28, 1950.

Rehearing Denied May 9, 1950.

Spain, Gillon, Grooms & Young, and Ralph B. Tate, and John P. Ansley, all of Birmingham, for appellant.

HARWOOD, Judge.

This is an appeal from a verdict and judgment against the appellant, defendant below, in a suit on a life insurance policy.

This is the second time this case has been before this court. See Liberty National Life Insurance Co. v. Trammell, 33 Ala. App. 275, 33 So.2d 479.

The plaintiff below, appellee here, stated her cause of action in one count which was substantially in code form.

Demurrers to the complaint being overruled the pleading was in short by consent, with a special plea of tender.

The issues raised by the pleading and evidence in addition to the plea of tender, were: (1) That answers made in the application for insurance were false and were made with actual intent to deceive or that the matters misrepresented increased the risk of loss in that the answers in the application dated 23 October 1944 denied insured had had cancer and denied that insured had been attended by a physician in the last two years, when in fact, he had been operated on for cancer by Dr. John W. Rose in July 1944, the policy being issued on 6 November 1944, and (2) that the insured was not in sound health on the date of the issue of the policy, in that he was afflicted with cancer on said date of issuance.

The plaintiff's case below consisted of the testimony of Mrs. Ethel Ball, who was formerly Mrs. John E. (Ethel) Trammell, the beneficiary under this policy, and the introduction of the policy herein sued on, and the death certificate issued upon Mr. Trammell's death.

On direct examination Mrs. Ball testified that in July 1944 Mr. Trammell, the insured, had a mole on the right side of his chest. It was smaller than a dime, and brownish in color, not black. She had never heard insured complain about the mole, but in July 1944 Dr. Rose removed the mole, the procedure being done in Dr. Rose's of-

Lipscomb & Brobston , of Bessemer, and D. G. Ewing, of Birmingham, for appellee.

fice after insured had gotten off from work. Insured did not lose any time from work as a result of this operation.

On 6 November 1944 the defendant issued a life insurance on the life of Mr. Trammell.

Mrs. Ball stated she furnished the information contained in the application on which the policy was issued, application being read over to insured and by him signed.

At this time insured was working regularly, and appeared in good health.

Mrs. Ball knew that insured had had the mole removed from his chest prior to the operation, but did not consider this an operation.

Mrs. Ball further testified that proof of claim under the policy had been duly filed.

On cross examination Mrs. Ball testified that insured was operated on by Dr. Earl Drennen, of Birmingham, 2 January 1945.

She further testified that she furnished the information for the answers to the application for this policy, and that in answer to the question: "Name all physicians attending applicant in last two years" she had answered "None," and in answer to the question "Have you ever had * * * cancer tumor * * * ?" she answered "No."

She had not known of the removal of the mole by Dr. Rose until the insured returned home the night of the operation.

The insured had not complained of this mole prior to its removal.

In this connection however the record shows the following:

"Q. Do you recall at the last trial of this case that I asked you if his shirt hadn't rubbed him causing some trouble, and as to what your answer was, if any? A. I don't remember exactly.

"Q. I will ask you if you didn't reply to that question,—I will read you the question: Had he been complaining of the mole hurting him; had he been complaining of the mole hurting him; and the answer is: The only trouble he ever had was the shirt rubbing sometimes, is all that he had complained of. Do you recall testifying to that? A. If that is what I said. I don't remember exactly how I said it.

"Q. Well, is that true? A. That is the only trouble that he could have had that I remember. He didn't complain about that other than his shirt did touch it at times."

After the operation by Dr. Rose, Mrs. Ball testified she did not notice any redness about insured's chest until the first part of December.

Mrs. Ball stated that she signed and filed the "Proof of Death" filed in connection with the claim under this policy. This document was then introduced as an exhibit by the defendant. The pertinent portion is the answer to the question: "Give names of all physicians who attended deceased during last illness and during two years prior to death, and dates of attendance," to which Mrs. Ball had answered: "Dr. Earl Drennen, South Highland Hospital, Dr. J. R. Horn, Bessemer, Ala."

The pertinent portions of the Death Certificate on insured, introduced by plaintiff into evidence as an exhibit, are contained in the medical certification, executed by Dr. J. R. Horn. This shows that insured died on 10 September 1945, and that the cause of his death was melano sarcoma, of 8 months duration.

For the defense Dr. John W. Rose testified that in July 1944 he operated on the insured for the purpose of removing a cancer. After removal of the cancerous material he carried it to Dr. Albert E. Casey for pathological examination. Dr. Casey's report classified the material as "melanoma about grade II, early."

In answer to the following question: "If in July, 1944, a pathologist graded a tissue from a human body and classified it as Melanoma about grade II, and if that same pathologist in January, 1945, made another pathological report of tissue taken from the same person that it was taken from in July, and found on that occasion that the patient had melanoma sarcoma about grade III, I will ask you to state to the jury whether or not in your opinion from the period of from July, 1944, to January, 1945, whether this patient was suffer-

ing from melano sarcoma, or cancer," Dr. Rose answered "Yes, sir."

On cross examination Dr. Rose testified that the insured had talked to him at least once before he operated on him and had complained about the mole being irritated by his clothes. Dr. Rose thought the mole was dangerous and a good possibility that it was cancerous. He operated after injecting novocaine, and removed the mole and surrounding tissue, taking out skin and tissue approximately an inch or an inch and a half in length and an inch in width and one half inch in depth. He then repaired the defect and told insured he could go to work the next day.

Dr. Rose stated that he had removed all the growth and tissue about the tumor, but in response to the question "Didn't you say a while ago you cut all the growth and tissue when you are operating?" he replied "All that I could see," and in this connection the record shows the following:

"Q. Didn't you tell Mrs. Trammell here over the 'phone that you cut out the entire growth, every bit of the growth, and there wasn't the least bit of danger from that mole? A. No.

"Q. Did you tell her you cut it all out? A. Yes. I told her I cut all of it out I could see.

"Q. Doctor, did you tell her you cut it all out you could see, or did you tell her you cut out all of it and there wasn't any growth there? A. I told her that I cut out all that was visible. I wouldn't say all that was there.

"Q. You wouldn't say that you cut all of the growth of that tumor or mole out that was there at the time of the operation? A. No."

Dr. Rose personally carried the tissue he removed from insured to Dr. Albert E. Casey, a pathologist, for laboratory examination.

Dr. Albert E. Casey, a pathologist, testified for the defendant below. His testimony tended to show that "a melanoma is a form of cancer which generally has pigments in the cells that arise, or most of them, from a brown or blue mole that people have on the surface of the body. Or it may rise in certain other places. But the large majority of them arise from that brown or blue mole."

Tumors are graded by pathologists as grades 1, 2, 3, and 4. It is claimed that all grades are likely to cause death. A grade 4 tumor will kill within six months, a grade 2 tumor within two years. For practical purposes all malignant tumors are fatal unless properly treated—that is "If the patient comes to the doctor early enough and he removes it completely; that is what I mean by properly treated." Dr. Casey further testified that "If it is not all removed that cancer will recur in approximately 100 per cent of cases."

The original signed reports of Dr. Casey of the pathological examinations made in July 1944 and in January, 1945 were received in evidence.

The diagnosis in the report dated 7–13–44 is "Anterior chest wall-melanoma about Grade II, early."

The diagnosis in the report dated 1–2–45 is "Chest wall-melanoma, about Grade III."

By agreement the testimony of Dr. Earl Drennen, taken by deposition, was read in evidence for the defendant.

On direct examination Dr. Drennen testified that the insured first consulted him on 27 December 1944. The insured at that time gave a history of having a black mole removed six months previously. Dr. Drennen then made a diagnosis of "malignant tumor, recurrence, on the right side of breast bone."

On 2 January 1945 Dr. Drennen operated on the insured and excised the tumor and surrounding tissue. The pathological report of Dr. Casey on this tissue revealed that insured was afflicted with melano-carcinoma. Dr. Drennen then cut the tumor open and it was black inside, thus confirming to his mind that it was a melano-carcinoma, black.

This type of cancer is almost universally fatal, and Dr. Drennen stated he had known about 18 such cases in his surgical experience, and all had been fatal.

The record further shows the following in regard to Dr. Drennen's opinion as to the duration of insured's affliction:

"Q. Doctor, assuming in July 1944, Mr. Trammell had a so-called black mole removed from his chest, which the pathologist diagnosed as being a melano-carcinoma, will you state whether or not Mr. Trammell was suffering from melano-carcinoma from July 1944, until the time you saw him in December 1944? A. I think he had it all that time. I don't think he was suffering—

"Q. Maybe I used the word "suffering" incorrectly. Was he afflicted with that type of cancer? A. Yes. It was malignant during that time.

"Q. All during that intervening time he did have this melano-carcinoma? A. That is my belief.

"Q. Assuming Mr. Trammell died in September, 1945, and the cause of his death was shown as melano-carcinoma, state whether or not he was afflicted with melano-carcinoma from July 1844 (obviously 1944) until September 1945? A. In my opinion, he was."

On cross examination Dr. Drennen testified that the cause of cancer is unknown. The only type of moles that are dangerous are the black ones. Some of these are malignant and some are benign. The benign type may suddenly begin to grow after years of benignancy, the growth sometimes being caused apparently by an irritation.

Dr. Drennen stated that when a patient came to him with a mole having a black slick surface with elevated borders indicating the tumor was growing, it has been his practice to take such patients to a hospital and have a pathologist present to examine the tissue. He felt sure this would be the practice of the average surgeon in Birmingham. As to whether such operation would customarily be performed without assistance and hospitalization was fairly dependent upon the doctor.

It cannot be determined by a cutting operation the distance the roots of a cancer have gone. In an operation of this type the surgeon goes as wide and deep as possible. In the insured's case the depth was limited by the ribs and chest wall.

Except for the history given by the insured Dr. Drennen stated he would have no way of knowing the duration of the insured's cancer, and that cancers of this type could develop rapidly.

Benign tumors are not considered fatal unless they become malignant, when they are usually so considered, though some cancers are cured.

On redirect examination Dr. Drennen testified that as to whether a competent physician should allow a patient to go home after removing a mole from the breast, would be a matter of individual judgment on the part of the physician. If the physician thought it was malignant, he probably would take the patient to a hospital and make a wide excision. Dr. Drennen, in this connection, also stated: "However, I will state this: Of the black moles I have seen I have never seen one cured no matter what you do," and that was the type mole the insured had. Dr. Drennen stated he would never let a patient go home the same day of this type of operation, though he knew of no valid medical objection for so doing.

The record also shows the following in connection with Dr. Drennan's testimony regarding insured's condition:

"Mr. Tate: Doctor, I will ask you one further question: The removal of the black mole, such as Mr. Trammell had, could the action of the surgeon in removing that cause it to become malignant where it was not malignant at the time of the removal?

"The Witness: No.

"Mr. Tate: That is all.

"Mr. Brobston: Doctor, you are assuming that the type he is referring to is the type that you diagnosed on Mr. Trammell at the time you examined him; is that correct?

"The Witness: That is right.

"Mr. Brobston: All right.

"Mr. Tate: And if that particular mole was classified by the pathologist Doctor, as grade two, I will ask you whether or not the removal of that by a physician could cause that to have become malignant?

"The Witness: If it was grade two it was already malignant.

Dr. J. R. Horn, a witness for the defendant, testified that he had attended insured from 29 July 1945 to his death on 10 September 1945.

From what he observed insured had some kind of melanoma. In response to a question whether or not when he used the term melanoma he was referring to a type of cancer, Dr. Horn replied: "No. You are covering a little more ground than cancer. When you use melanoma you are covering any kind that would be malignant, and that would be cancer or sarcoma of any kind of melano tumor."

Dr. Horn stated that from his own independent knowledge he could not say how long insured had been afflicted with cancer, and the statement in the death certificate signed by him that the duration of insured's condition was eight months was based on the history of insured's illness given by insured's family.

On cross examination Dr. Horn testified that the type of cancer insured had might develop rapidly. That he could not state what was the cause of this type of cancer, though they usually started from a mole. Irritation of a benign tumor can possibly cause it to become malignant.

In rebuttal the plaintiff recalled Mrs. Ball as a witness. She testified that she talked to Dr. Rose shortly after he operated on insured and asked him if there was any danger of cancer and he told her no, that he had gotten all of the roots out and there was no cause to worry.

She testified further that insured had worked virtually continuously after Dr. Rose's operation until January 1945, and that in the first trial she had testified that she had not heard insured complaining, but "probably his shirt rubbed it, was the only trouble he ever had."

In our opinion on the prior appeal of this case we stated the legal principles we considered applicable the determination of that appeal. Because equally applicable to our present consideration we again set them forth [33 So.2d 479, 482]:

"The policy contained the following provision: 'Effective Date—This policy shall take effect on its date of issue, provided the insured is then alive and in sound health, but not otherwise.'

"Such a proviso in the policy is a binding part of the contract of insurance, and is a warranty within the meaning of Section 6, Title 28, Code of Alabama 1940. To avoid the policy the unsound health must be such as to increase the risk of loss. Brown-Service Ins. Co. v. Wright, [32] Ala.App. [578], 28 So.2d 318; Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16; Independent Life Insurance Co. v. Seale, 219 Ala. 197, 121 So. 714.

"If the insured, at the time of the issuance of this policy was suffering from a disease which increased the risk of loss, the warranty in the policy as to sound health was breached, regardless of whether the insured knew of the presence of such disease. Aetna Life Ins. Co. v. Norfleet, 232 Ala. 599, 169 So. 225; New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277.

"A brief recapitulation of the significant dates shows that the insured was operated on by Dr. Rose in July, 1944; on 6 November 1944 the policy was issued; in January 1945 he was operated on by Dr. Drennen; on 10 September 1945 insured died of cancer.

"Cancer is a disease which the courts judicially know increases the risk of loss and if existing at the time of the issuance of a policy containing a warranty as to sound health per se breaches such warranty. Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335; Aetna Life Insurance Co. v. Norfleet, supra; Life Ins. Co. of Virginia v. Mann, 28 Ala.App. 425, 186 So. 583.

\*     \*     \*     \*     \*     \*

"It is our opinion that the evidence introduced by the plaintiff below fails to dispute in its material aspect what in our opinion was established by the defense by an overwhelming preponderance of the evidence, namely that the insured was suffering from cancer on the date of the issuance of the policy. Being of the opinion that there is no material conflict in the evidence on this point, but differing with the learned trial judge as to the interpretation of such

evidence, the rule of presumption in favor of the conclusion of the trial judge does not prevail. Wright v. Price, 226 Ala. 591, 147 So. 886; American Life Ins. Co. v. Williams, 234 Ala. 469, 175 So. 554, 112 A.L.R. 1215.

"For the reasons set out above it is our opinion that the lower court erred in refusing appellant's motion for a new trial on the grounds that verdict was contrary to the law and the evidence in that the great weight and preponderance of the evidence shows that the insured was not in sound health on the date of the issuance of the policy."

After careful consideration of the evidence presented in the second trial, it is our conclusion that the above statements are equally applicable to the appeal now being considered, and are hereby adopted into this opinion.

Appellant's counsel strenuously urges that the lower court also erred in its refusal to give appellant's written requested affirmative charge with hypothesis in the trial below, on two theories:

"(1) The uncontradicted medical testimony of Dr. John W. Rose, Dr. Albert E. Casey, and Dr. Earl Drennen, whose opinions were based on laboratory tests, microscopic and personal examinations, was that assured was afflicted with cancer on the date the policy was issued, and

"(2) The uncontradicted testimony **is** that appellee falsely and with intent to deceive did misrepresent to appellant that her husband had not been attended by a physician, when as a matter of fact, assured had had an operation for cancer several months prior to the date the application was taken."

As to the second theory upon which appellant insists that it was entitled to the affirmative charge with hypothesis, that is the misrepresentation in the application that insured had not been attended by a physician within the past two years, we have concluded that such contention is meritorious. Being of this conclusion we will pretermit consideration of the first theory advanced by the appellant as above set out.

The evidence is uncontradicted, including the testimony of Mrs. Ball, that the insured had consulted Dr. Rose and by that doctor had a mole removed in the July preceding the execution of the application on 23 October. To this extent the answer in the application that the applicant had not been attended by a physician in the last two years, based on information furnished by Mrs. Ball, the beneficiary, is obviously untrue. Where misrepresentations are attributable to a beneficiary, such misrepresentations defeat the rights of the beneficiary. New York Life Insurance Co. v. Zivitz, 243 Ala. 379, 10 So.2d 276, 143 A. L.R. 321.

Representations touching consultation with or treatment by a physician must relate to some serious ailment material to the question of life expectancy. Zivitz case, supra. Under the second alternative of Section 6, Title 28, Code of Alabama 1940, the party making the representation may be unaware of his or her misrepresentation of the true facts and may be wholly innocent of any bad motive. In such case, intent to deceive is not a material inquiry. New York Life Ins. Co. v. Horton, supra.

Mrs. Ball's idea therefore that Dr. Rose's removal of the mole on insured was of such a minor character as to not be considered in answering the question cannot affect this case if in truth and fact the revelation of such information may have involved the disclosure that insured at the time of the issuance of the policy was suffering from a disease which increased the risk of loss.

"A 'material risk' is any previous affection which might reasonably have been considered a menace to the prolongation of the life of the insured, and that, had it been revealed, the application would have been rejected." Metropolitan Life Ins. Co. v. Dixon, 226 Ala. 603, 148 So. 121.

At the time this application was executed in October, 1944, Dr. Rose, from his clinical diagnosis and laboratory confirmation thereof, knew that the insured, in the July preceding, was afflicted with cancer. We of course judicially know that cancer increases the risk of loss if existing at the time of the issuance of the policy. The defendant

company was entitled to all material information tending to shed light on the possibility or probability of the existence of such disease in the insured as a basis for its acceptance or rejection of the application. "A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided." New York Life Ins. Co. v. Horton, supra [235 Ala. 626, 180 So. 282].

In the application executed by the insured, he expressly authorized any physician who had examined or attended him to disclose any knowledge or information thereby acquired. Dr. Rose, as a source of material information, was hidden by the answer in the application. Regardless of the innocence with which such misrepresentation may have been made, its misleading character is obvious, "nor can it be questioned that information thereof would have affected the conduct of the insurer to a very material extent." Metropolitan Life Ins. Co. v. Dixon, supra.

We therefore conclude that the lower court also erred in refusing to give defendant's written request for the affirmative charge with hypothesis.

Reversed and remanded.

BRICKEN, P. J., not sitting.

After remandment.

HARWOOD, Judge.

The Supreme Court has found that we erred in our conclusion that the lower court erred in refusing the appellant's request for the affirmative charge with hypothesis.

This was one of two grounds on which we based our conclusion that this cause should be reversed. The other was that the lower court erred in refusing appellant's motion for a new trial because the verdict was contrary to the law and the evidence

in that the great weight and preponderance of the evidence shows that the insured was not in sound health on the date of the issuance of the policy sued on. We find no reason for departing from this conclusion.

Reversed and remanded.